# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| J.W., a Minor, by and through her guardian Angela Johnson, CRYSTAL SCHULTZ, MICHELE EUSEBE, JUSTIN MEDINA, ARTHUR PODROYKIN, and KATHERINE CHAUDHRY, individually and on behalf of all others similarly situated, <br><br>      Plaintiffs, <br><br> vs. <br><br> LIVANOVA USA, INC., <br><br>      Defendant. | CIVIL ACTION NO. 4:24-CV-02250 |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH INCORPORATED MEMORANDUM OF LAW

Plaintiffs, Angela Johnson, as guardian of J.W., a minor, Crystal Schultz, Michele Eusebe, Justin Medina, Arthur Podroykin, and Katherine Chaudhry,[1] individually and on behalf of others similarly situated, respectfully move pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (e) to certify the Settlement Class,[2] preliminarily approve the proposed Settlement, and approve the Notices, Notice Program, Claim Form, and Claims process.

## I.    INTRODUCTION

On April 25, 2024, Defendant LivaNova USA, Inc. announced a Data Security Incident impacting Private Information, including some Social Security numbers and certain medical information, of approximately 129,000 individuals. See Joint Declaration of Class Counsel ("Joint Decl.") ¶ 3, attached as ***Exhibit B***. As a result of the Data Security Incident, this Action was

---

[1] Crystal Schultz, Michele Eusebe, Justin Medina, Arthur Podroykin, and Katherine Chaudhry will be designated as the Class Representatives.

[2] All capitalized terms herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached here as ***Exhibit A***.

initiated in connection with Defendant's alleged failure to safeguard the Private Information it maintained on behalf of the Settlement Class. *Id.* ¶ 6. Defendant denies all liability and wrongdoing. *Id.* ¶ 6.

After extensive arm's-length negotiations and with the assistance of an independent third-party mediator, the Parties reached a Settlement that is fair, adequate, and reasonable. *Id.* ¶ 9. The Settlement's $1,205,000.00 all cash, non-reversionary Settlement Fund will be used to pay: (1) all Settlement Class Member Benefits; (2) all Settlement Administration Costs; (3) any Court-awarded Service Awards; and (4) any Court-awarded attorneys' fees and costs. Agreement ¶ 16. All Settlement Class Members may elect one of two types of Cash Payments and Credit/Data Monitoring. *Id.* ¶ 17. Additionally, Defendant has agreed to valuable injunctive relief in the form of additional security measures that they commit to implementing on or before Final Approval. *Id.* ¶ 19. Plaintiffs strongly believe the Settlement is favorable to the Settlement Class. *Id.* ¶ 27.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Defendant is a global medical technology company specializing in neuromodulation devices and cardiopulmonary products. Joint Decl. ¶ 4. In its capacity as a business associate to health care providers, Defendant maintains certain information about individuals receiving Defendant's neuromodulation devices. This information varies by individual but may include names, contact information (e.g., phone number, email and postal address), Social Security number ("SSN"), date of birth, medical information (e.g., treatment, condition, diagnosis, prescription, physician, medical record number and device serial number), and health insurance information. *Id.*

On or about November 19, 2023, Defendant discovered that an unauthorized party had infiltrated and extracted Private Information from its computer systems on or around October 26,

2023. *Id*. ¶ 5. On May 31, 2024, Defendant began sending notice letters to individuals advising that their Private Information had been potentially compromised in the Data Security Incident. *Id*. Commencing in June 2024, Defendant was named in six putative Related Actions. *Id.* ¶ 6.

Plaintiffs in the Related Actions successfully sought consolidation and appointment of Class Counsel as Interim Co-Lead Counsel. [DE# 10, 11, 12, 20]. On September 23, 2024, Plaintiffs' Consolidated Class Action Complaint alleged: (1) negligence; (2) breach of implied contract and breach of implied covenant of good faith and fair dealing; (3) unjust enrichment; (4) violation of Illinois Consumer Fraud Act; (5) violation of N.Y. Gen. Bus. Law §§ 349 *et. seq*. (6) violation of the Washington Consumer Protection Act; and (7) declaratory judgment. [DE# 22].

Class Counsel prepared written discovery, including interrogatories, document requests, and a comprehensive Fed. R. Civ. P. 30(b)(6) notice. Joint Decl. ¶ 7. Class Counsel also consulted with multiple data experts to understand how the breach occurred, the type of information involved, and whether the information was published on the Dark Web. *Id*.

The Parties began discussing settlement and scheduled mediation with the Honorable Diane Welsh (Ret.), an experienced data breach mediator, on October 2, 2024. *Id.* ¶ 8. Before mediation, Plaintiffs propounded informal discovery requests to be prepared to negotiate. *Id*. ¶ 10. The Parties also exchanged mediation briefs outlining their positions as to liability, damages, and settlement-related issues. *Id*. The Parties successfully agreed to the material settlement terms through their significant arms-length negotiations. *Id*. On October 4, 2024, they filed a Joint Motion to Stay and Notice of Mediated Settlement. [DE# 24]. Over several weeks, the Parties diligently drafted, negotiated, and finalized the Settlement Agreement, Notices, and Claim Form, and agreed to a settlement administrator. Joint Decl. ¶ 11. The Settlement Agreement was signed on December 2, 2024. *Id*.

### III.    SUMMARY OF SETTLEMENT

### A.    Settlement Class

The Settlement Class has approximately 129,000 members and is defined as follows:

> All persons in the United States whose Private Information was potentially compromised as a result of the Data Security Incident.

Agreement. ¶ 62.  Excluded from the Settlement Class are all persons who are governing board members of Defendant; governmental entities; the Court, Court's immediate family, and Court staff; and any individual who timely and validly opts-out of the Settlement. *Id*.

### B.    Settlement Consideration

The Settlement's non-reversionary $1,205,000.00 Settlement Fund will be the total sum paid by Defendant to settle this Action and will be used to pay: (1) all Settlement Class Member Benefits; (2) all Settlement Administration Costs; (3) any Service Awards to Class Representatives; and (4) any attorneys' fees and costs awarded to Class Counsel. *Id*. ¶ 70. Settlement Class Members may elect one of two types of Cash Payments and Credit/Data Monitoring. *Id*. ¶ 74. The Defendant also has agreed to valuable injunctive relief in the form of additional security measures that they commit to implement on or before Final Approval. *Id*.

1.    *Cash Payments* - Settlement Class Members may elect either:

a.    **Cash Payment A – Documented Losses.** A Claim for a Cash Payment for up to $5,000.00 (subject to *pro rata* adjustment based upon total Valid Claims) per Settlement Class Member upon presentment of reasonable documented Data Security Incident related losses. *Id*. To receive a payment, Settlement Class Members must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documented losses and submitting reasonable supporting documents. *Id*. They shall not be reimbursed for expenses reimbursed for the same expenses by another source, including compensation provided in connection with the Credit/Data

Monitoring and identity theft protection product offered as part of Defendant's notification letter or otherwise. *Id.* If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if the Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure, the Claim will be rejected, and the Settlement Class Member's Claim will be as if he or she elected Cash Payment B. *Id.*

        **b.**    **Cash Payment B – Flat Cash Payment.** As an alternative to Cash Payment A, a Settlement Class Member may elect to receive Cash Payment B, which is a flat cash payment in the amount of $100.00 (subject to *pro rata* adjustment based upon total Valid Claims. *Id.*

        **2.**    *Credit/Data Monitoring* - In addition to electing a Cash Payment, Settlement Class Members may elect up to three years of three-bureau Credit/Data Monitoring that will provide the following benefits: three-bureau credit monitoring, Dark Web monitoring, identity theft insurance coverage for up to $1,000,000, and fully managed identity recovery services. *Id.*

        *Pro Rata Adjustments on Cash Payments* - Settlement Class Member Cash Payments will be subject to a *pro rata* increase from the Settlement Fund if the amount of Valid Claims is insufficient to exhaust the entire Settlement Fund. If the amount of Valid Claims exhausts the Settlement Fund, Cash Payments may be reduced *pro rata* accordingly. Agreement ¶ 75. To calculate the *pro rata* increase or decrease, the Settlement Administrator must distribute the Settlement Fund first for Credit/Data Monitoring and then for Cash Payments. *Id.* Any *pro rata* adjustment will be on an equal percentage basis. In the unexpected event the Credit/Data Monitoring value on its own exhausts the Settlement Fund, the length of the Credit/Data Monitoring provided will be reduced as necessary to bring the cost within the Settlement Fund. *Id.*

        **3.**    *Business Practice Changes* – Defendant has provided assurances that it either has or will undertake reasonable steps to further secure its systems and environments. *Id.* ¶ 76.

4.    *Releases* – The Releasing Parties will release the Released Parties for claims relating to the Data Security Incident. Regardless of whether they submit a Claim, Settlement Class Members who do not opt-out of the Settlement will release all claims, whether known or unknown, against Defendants and the other Released Parties. *Id.* § XIII.

5.    ***The Notice Program, Claim Process, Opt-Outs, and Objection*s**

The Parties have agreed to use Verita Group, LLC as the Settlement Administrator, who shall administer various aspects of the Settlement under the Parties' supervision. *Id.* ¶¶ 79-81.

***Notice Program*** - Defendants will deliver the Class List to the Settlement Administrator within 30 days of Preliminary Approval. *Id.* ¶ 84. Within 45 days of Preliminary Approval, Email Notice and Postcard Notice will be sent to Settlement Class members to either the email address (if available) or last postal address Defendant has on record. *Id.* ¶ 85. The Settlement Administrator will perform reasonable address traces for undeliverable Postcard Notices. *Id.* ¶ 92. It will consider whether additional publication notice or a media plan is necessary to reach Settlement Class Members for whom Defendant does not have an email address or postal address. Email Notice and Postcard Notice shall include, *inter alia*: the Settlement's main terms; how to submit a Claim Form; the Claim Form Deadline; the opt-out deadline; the deadline to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; Final Approval Hearing date; and Settlement Website address at which Settlement Class members may access the Agreement and other related documents and information. *Id.* ¶ 86. Those Notices will direct Settlement Class members to review the Long Form Notice's opt-out and objection instructions. *Id.* ¶ 88.

***Claims Process*** - The Claims process is structured to ensure all Settlement Class members have adequate time to review the Settlement terms, compile documents supporting their Claim if Cash Payment A is elected, submit Claims, and decide whether to opt-out or object. Joint Decl. ¶

34. Claim Forms (mail or online) are due to the Settlement Administrator by the Claim Form Deadline (15 days before the initial Final Approval Hearing date). Agreement ¶¶ 24, 95. The Claim Form is in plain language for easy completion. Joint Decl. ¶ 35. The Settlement Administrator will review the Claim Forms for completeness and validity. Agreement ¶ 96.

*Opt-outs and Objections* – The opt-out and objection deadlines are 30 days before the original Final Approval Hearing date, *id.* ¶¶ 47-48, to provide sufficient time to access and review the Settlement documents, including Plaintiffs' Application for Attorneys' Fees, Costs, and Service Awards, which will be filed 45 days before the original Final Approval Hearing date and posted on the Settlement Website. *Id.* ¶ 107. Anyone who opts-out may not object.

### 6. *Service Awards, Attorneys' Fees and Costs*

*Service Awards* - The Settlement Agreement calls for reasonable Service Awards for the Class Representatives of up to $2,500.00 each, *id.* ¶ 109, meant to compensate them for their efforts on the Settlement Class' behalf, including serving as named Plaintiffs, assisting in the Action's investigation, maintaining contact with Class Counsel, reviewing case documents, being prepared to assist with discovery, and answering Class Counsel's many questions. Joint Decl. ¶ 36.

*Attorneys' Fees and Costs* - After agreeing to the Settlement's material terms, Class Counsel negotiated attorneys' fees and costs as part of the total Settlement Class Member Benefits. Class Counsel intend to seek an attorneys' fees award not to exceed 33.33% of the Settlement Fund and reimbursement of litigation costs. Agreement ¶ 110. The Notices advise the Settlement Class of these intended requests and further information on how to object. Joint Decl. ¶ 37. The Motion for Final Approval will include the Application for Attorneys' Fees, Costs, and Service Awards prior to the deadlines to opt-out of or object. Agreement ¶ 107.

### 7. *Funds Remaining After Distribution*

The Settlement will exhaust the Settlement Fund. *Id.* ¶ 112.  If funds remain from uncashed checks 20 days following the 180-day check negotiation period, a subsequent payment will be evenly made to all Settlement Class Members with approved Claims for Cash Payments who cashed or deposited the initial payment, provided the average check amount is at least $3.00. Distribution of this remaining Net Settlement Fund shall continue up to a maximum of $500 for any Settlement Class Member until the average check or digital payment is less than $3.00, whereupon all remaining funds shall be distributed to an appropriate mutually agreeable *cy pres* recipient to be approved by the Court. *Id.*

## IV.    LEGAL AUTHORITY

Rule 23(e) requires court approval of any class settlement, following notice to the class. The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. 2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22, 11.27 (3d ed. 1992); *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 175 (5th Cir. 1979). The standards at preliminary approval are not as stringent as those applied to a motion for final approval. *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 310 F.R.D. 300, 314 (E.D. La. 2015). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *Id.* at 314–15.

Plaintiffs here seek preliminary approval of the proposed Settlement—an initial evaluation of the fairness of the proposed Settlement. *See Manual for Complex Litigation* § 30.44 (4th ed.).

Judicial and public policy favors the resolution of disputes through settlement. *O'Donnell v. Harris Cnty.*, No. H-16-1414, 2019 WL 422040, at *8 (S.D. Tex. Sept. 5, 2019); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) ("Particularly in class action suits, there is an overriding public interest in favor of settlement." (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). There is a strong presumption in favor of finding settlement agreements fair—particularly when they have been reached by experienced counsel, with the assistance of a third-party neutral, after a meaningful exchange of information. *O'Donnell*, 2019 WL 4224040 at *9 (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 02-CV-1152-M, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (quoting *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012))). Settlements are not required to "achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation"— rather, compromise is the essence of settlement, and a court may rely on the judgment of experienced counsel for the parties. *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. Feb. 21, 2007). In granting preliminary approval, the Court determines it will "likely" be able to grant final approval under Fed. R. Civ. P. 23(e)(2) and certify the Settlement Class.

Because the proposed Settlement falls within the range of possible approval, this Court should grant Preliminary Approval and allow Notice to be provided to the Settlement Class. *See* 2 Newberg & Conte, *Newberg on Class Actions* ("*Newberg*") § 11.25 (3d ed. 1992).

## V.    LEGAL DISCUSSION

### A.    The Court Should Certify the Proposed Class for Settlement Purposes.

Under Fed. R. Civ. P. 23(a), a class action may be maintained where the movants demonstrate numerosity, commonality, typicality, and adequacy of representation. Additionally,

under Fed. R. Civ. P. 23(b)(3), a class may be maintained where the predominance and superiority elements are met. When evaluating certification of a settlement class, manageability is not a concern because there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Despite the necessarily rigorous analysis of certain prongs at the preliminary approval stage, class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a *national* basis—including the record-breaking settlement in *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. 2019). *See also, e.g.*, *Kostka v. Dickey's Barbecue Restaurants, Inc*., No. 3:20-cv-03424-K, 2022 WL 16821685 (N.D. Tex. 2022), *report and recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022); *Welsh v. Navy Federal Credit Union*, No. 5:16–CV–1062–DAE, 2018 WL 7283639 (S.D. Tex. 2018); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig*., 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case is no different.

***Numerosity.*** Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). A class of 100 to 150 members "is within the range that generally satisfied the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Here, the Settlement Class clearly surpass that threshold because it includes approximately 129,000 individuals who had their Private Information potentially compromised. Judicial economy would be well-served by certification.

***Commonality.*** Commonality requires Plaintiffs to show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold is not high, as every question need not be common, rather the questions linking class members must be substantially related to the resolution of the litigation and capable of generating common answers "apt to drive the resolution of the

litigation." *In re Heartland*, 851 F. Supp. 2d at 1052 (citing *Wal-Mart Stores v. Dukes,* 564 U.S. 338, 347 (2011)). Commonality can be satisfied by an "instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014)). Here, the commonality requirement is met because numerous common issues exist, including: whether Defendant failed to adequately safeguard the Settlement Class' Private Information; whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of that information; whether Defendant's data security systems prior to and during the Data Security Incident complied with applicable data security laws and regulations; and whether Defendant's conduct was negligent. These common questions, and others alleged in the Complaint, are central to the causes of action, will generate common answers, and can be addressed class-wide.

**Typicality.** Rule 23(a)(3) typicality is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). Plaintiffs' and Settlement Class members' claims all stem from the Data Security Incident and the cybersecurity protocols Defendant had (or did not have) in place to protect their Private Information. All have Article III standing. *Kostka*, 2022 WL 16821685 at *4 (when class action settles at pleading stage, court only considers whether named plaintiffs plausibly alleged minimum Article III standing requirements, as Plaintiffs did in their Complaint). Thus, typicality is satisfied.

**Adequacy of Representation.** Plaintiffs must be able to provide fair and adequate representation. Plaintiffs must establish: (1) there is no antagonism or conflict of interest between the class representatives and other Settlement Class members; and (2) counsel and the Class

Representatives are competent, willing, and able to protect the interests of absent class members. *Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Here, Plaintiffs' interests are aligned with the Settlement Class as they seek relief for injuries arising out of the same Data Security Incident to their Private Information. The Settlement will make all of them eligible for the same Settlement Class Member Benefits. Further, proposed Class Counsel have decades of combined experience as class action litigators, including data breach litigation, and are well suited to advocate for the Settlement Class. See Joint Decl., Exs. 1-3. Moreover, they have put their collective experience to use in negotiating an early-stage settlement guaranteeing immediate relief.

**Predominance and Superiority.** Rule 23(b)(3) provides class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for failure and efficiently adjudicating the controversy." This inquiry is two-fold. First, "[i]n order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). In this case, key predominating questions are whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the Private Information and whether Defendant breached that duty. The common questions predominate over any individualized issues, like in other data breach cases. *See, e.g.*, *In re Heartland*, 851 F. Supp. 2d at 1059 (predominance satisfied in data breach case despite state law variations, concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (same); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (same); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (same). Second, the

resolution of approximately 129,000 claims in one class action is far superior to litigating individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating so many individual cases arising out of the Data Security Incident.

Thus, with Rule 23(a) and 23(b)(3) satisfied, the Settlement Class should be certified.

## B.    The Settlement Terms are Fair, Adequate, and Reasonable.

At Preliminary Approval, and before Notice is sent, the Court must determine it will "likely" be able to grant Final Approval under the Rule 23(e)(2) factors, deciding whether:

(A) the class representative and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Before the 2018 Rule 23(e) revisions, the Fifth Circuit developed its own *Reed* factors for whether a settlement is fair, adequate, and reasonable, including: (1) evidence the settlement was obtained by fraud or collusion; (2) complexity, expense, and likely duration of the litigation; (3) stage of the litigation and available discovery; (4) probability of plaintiffs prevailing on the merits; (5) range of possible recovery and certainty of damages; and (6) opinions of class counsel, class representatives, and absent class members. *O'Donnell*, 2018 WL 6219933 at *9 (citing *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).

Because the Rule 23 and *Reed* factors overlap, Fifth Circuit courts often combine them. *Id.* at *9 (citing *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. H-17-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019)); *see also* Fed. R. Civ. P. 23(e)(2), Committee Notes to 2018

amendments ("The goal of this amendment is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate. *O'Donnell*, 2019 WL 427331 at *9. A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arms-length negotiation." 2 *McLaughlin on Class Actions* § 6:7 (15th ed. 2018). Here, the Court should find it is likely to conclude the Settlement is fair, reasonable, and adequate under both the Rule 23(e)(2) and *Reed* factors and grant Preliminary Approval to allow Notice to issue to the Settlement Class.

      **1.**    ***Class Representatives and Counsel have Adequately Represented the Class. (Fed. R. Civ. P. 23(e)(2)(A)).***

As with Rule 23(a) adequacy of representation requirement, plaintiffs must establish that: (1) the there is no antagonism or conflict of interest between the class representatives and other members of the class; and (2) counsel and the class representatives are competent, willing, and able to protect the interests of absent class members. *Feder*, 429 F.3d at 130. Here, the Settlement Class members are all potentially affected by the same Data Security Incident as the Class Representatives, and thus the Class Representatives have common interests with the Settlement Class. Moreover, the Class Representatives have ably represented the Settlement Class, maintaining contact with Class Counsel, reviewing and approving pleadings, assisting in the investigation of the Action, remaining available for consultation throughout mediation, reviewing the Settlement documents, and answering Class Counsel's questions. Joint Decl. ¶ 36.

Class Counsel have also vigorously pursued the Settlement Class' interests in securing a

Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. To do so, they leaned on their extensive experience in data breach litigation, their detailed investigation of this particular matter, and informal discovery exchanged during the course of their negotiations. Joint Decl. ¶ 42. As such, Fed. R. Civ. P. 23(e)(2)(A) supports Preliminary Approval.

### 2. *The Settlement is the product of good-faith arm's-length negotiations and is absent of any collusion. (Fed. R. Civ. P. 23(e)(2)(B)).*

"The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *O'Donnell*, 2019 WL 427331 at *10 (quoting *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018)). "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011). Here, there is no evidence of fraud or collusion. After a full exchange of information related to liability and damages, the Parties participated in an in-person mediation with the assistance of respected mediator, the Honorable Diane Welsh (Ret.), to settle the Action. Joint Decl. ¶ 8. Thereafter, the Parties spent weeks negotiating, drafting, and finalizing the finer points of the Settlement in the Agreement. *Id.* ¶ 11. Moreover, the proposed Settlement does not favor any Settlement Class member over any other, weighing against any evidence of fraud or collusion and favoring approval. *See Vaughn v. Am., Honda Motor Co.*, 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007). Accordingly, the presumption of reasonableness should apply here, and both Fed. R. Civ. P. 23(e)(2)(B) and the first *Reed* factor are satisfied.

### 3. *The Settlement Agreement provides substantial relief to the Settlement Class, in light of the uncertainty of prevailing on the merits, the effectiveness of the proposed distribution of relief, and the attorneys' fees sought. (Fed. R. Civ. P. 23(e)(2)(C)).*

The third and most important Rule 23(e)(2)(c) factor weighs heavily in favor of granting

Preliminary Approval and overlaps with the second, fourth, and fifth *Reed* factors (complexity, length, and expense of litigating; probability of prevailing on the merits; and range of possible recovery and certainty of damages). The Settlement guarantees Settlement Class Members real relief for harms and protections from potential future fall-out from the Data Security Incident. First, all Settlement Class Members may select three years of Credit/Data Monitoring valued at $90.00 per person, per year to protect financial assets and providing identity protection. Agreement ¶ V(c); Joint Decl. ¶ 17. Second, they may Claim Cash Payment A (up to $5,000.00 for documented losses, subject to *pro rata* adjustment) or Cash Payment B ($100.00 flat cash payment, subject to *pro rata* adjustment). Agreement ¶ V(a)(b). These benefits are consistent with, and in fact exceed, other approved settlements. Joint Decl. ¶ 18.

Although Plaintiffs are confident in the merits of their claims, the litigation risks cannot be disregarded. Besides the potential that either side will lose at trial, Plaintiffs anticipate substantial additional costs if litigation continues, including experts. Plaintiffs would need to defeat a motion to dismiss, counter a later motion for summary judgement, and both gain and maintain certification of the Settlement Class, with a near inevitable interlocutory appeal attempt. As at least one court has found in this Circuit, because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).

Moreover, as the Motion for Final Approval will detail, the 33.33% of the common Settlement Fund for attorneys' fees is regularly granted in the Fifth Circuit. *See, e.g., Miller v. Global Geophysical Servs., Inc.*, No. 14-cv-0708, 2016 WL 11645372, at *1 (S.D. Tex. Jan. 14, 2016); *Frost v. Oil States Energy Servs., LLC*, No. 4:15–cv–1100, 2015 WL 12780763, *2 (S.D.

Tex. Nov. 19, 2015).

The Settlement's value is guaranteed in the face of uncertainty in prevailing on the merits. While Plaintiffs strongly believe in the merits, they also understand that Defendant asserts a number of potentially case-dispositive defenses. In fact, if litigation continues, Plaintiffs would likely have to immediately survive a motion to dismiss. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases generally face substantial hurdles—even just to make it past the pleading stage. *See, e.g., Logan v. Marker Group, Inc.*, 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) (dismissing all but one claim). Class certification is another hurdle. *See, e.g., In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying class certification in a data breach case).

Plaintiffs dispute the Defendant's defenses, but obviously success at class certification and trial is far from certain. Through the Settlement, Plaintiffs and Settlement Class members gain significant benefits without risking not receiving any relief at all if the case continues.

**4.   *The proposed Settlement treats Settlement Class Members equitably. (Fed. R. Civ. P. 23(e)(2)(D)).***

Here, the Settlement does not improperly discriminate between any segments of the Settlement Class. All Settlement Class members are eligible to make a Claim for a Cash Payment and Credit/Data Monitoring, subject to proper claim completion and validation by the Settlement Administrator.  Accordingly, this factor also weighs in favor of preliminary approval.

**5.   *The remaining "Reed" Factors also weigh in favor of Preliminary Approval.***

The remaining *Reed* factors also support Preliminary Approval and the Court's conclusion that it is likely to grant Final Approval. As to the third factor (stage of the litigation and available discovery), the Settlement was reached only after extensive investigation by the Parties and an informal exchange of information such that Class Counsel could fully understand the strengths and

weaknesses of Plaintiffs' claims and Defendant's defenses. Where Parties possess ample information with which to evaluate the merits of competing positions, a lack of formal discovery will not prevent preliminary approval of a settlement. *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *Cotton,* 559 F.2d at 1331.

As to the sixth factor (opinions of class counsel, class representatives, and absent class members), it is most appropriately examined after the Settlement Class has been issued Notice and absent Settlement Class members have a chance to respond, but there is no reason to believe there will be antagonism to the Settlement. Plaintiffs approve of its terms, as do proposed Class Counsel, based on their deep experience litigating data breach and other class actions. The Settlement's valuable relief to Settlement Class Members, makes it fair, reasonable, adequate, and worthy of Preliminary Approval. Joint Decl. ¶ 26.

Thus, these additional *Reed* factors weigh in favor of approving the proposed Settlement. Accordingly, the Court should grant Preliminary Approval.

### C.    The Proposed Settlement Administrator will Provide Adequate Notice.

Rule 23(e)(1) requires "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For a Rule 23(b)(3) class, notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The proposed Notice Program is designed to satisfy Rule 23(c)(2)(B) and the *Manual for Complex Litigation*. *See* Agreement, Exs. 1–3. Direct and individual notice via email or first-class

mail to each Settlement Class member will occur. Joint Decl. ¶ 28. If Email Notice is returned undeliverable, a Postcard Notice will be sent. If a Postcard Notice is undeliverable, the Settlement Administrator will research a better address and re-send Notice. *Id.* ¶ 29. The Long Form Notice will also be available to Settlement Class members on the Settlement Website, along with all relevant filings. *Id.* ¶ 30. The Settlement Administrator will maintain a toll-free telephone number by which Settlement Class members can seek answers to frequently asked questions or request a Long Form Notice or Claim Form be mailed. *Id.* ¶ 31. A post office box will be maintained to receive Claim Forms, opt-out requests, and objections. *Id.* ¶ 32.

The Notices are clear and straightforward, defining the Settlement Class and the Settlement's essential terms; clearly describing the options available to the Settlement Class and the deadlines for taking action; disclosing the requested Service Awards for the Class Representatives and the attorneys' fee amount Class Counsel intends to seek and that litigation costs will be sought; explaining the opt-out, objection, and Claim procedures and deadlines; stating the Final Approval Hearing date, time, and location; and prominently displaying Class Counsel's contact information. Agreement, Exs. 1–3.

The proposed direct Email Notice or Postcard Notice is the gold standard and is consistent with notice programs approved in this Circuit. *See*, *e.g.*, *Burnett v. CallCore Media, Inc.*, No. 4:21-cv-03176, 2024 WL 3166453, at *3 (S.D. Tex. June 25, 2024) (approving notice plan with postcard and email notice). Accordingly, the Notice Program should be approved. Joint Decl. ¶ 33.

## VI.    PROPOSED SCHEDULE OF EVENTS AND CONCLUSION

The Court should also set the Final Approval Hearing date and time. Deadlines in the Final Approval process, including the opt-out and objection deadlines, will be determined based on the original Final Approval Hearing date. Plaintiffs propose the following schedule:

| Notice Program Begins (Email Notice and Postcard Notice Sent) | 45 days after Preliminary Approval Order (subject to receipt of necessary information to pay Settlement Administrator and provision of Class List per ¶¶ 68, 84, 85 of the Settlement Agreement) |
|---|---|
| Notice Program Complete | 45 days before original Final Approval Hearing date |
| Deadline to file Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards | 45 days before original Final Approval Hearing date |
| Opt-Out Deadline | 30 days before original Final Approval Hearing date |
| Objection Deadline | 30 days before original Final Approval Hearing date |
| Deadline to Respond to Objections | 15 days before original Final Approval Hearing date |
| Deadline to Submit Claim Forms | 15 days before original Final Approval Hearing date |
| Final Approval Hearing | _____ __, 2025, at _____ am/pm. (Preferably the week of *May 12, 2025* or after) |

## VII.    PROPOSED SCHEDULD OF EVENTS AND CONCLUSION

Plaintiffs and Class Counsel respectfully request the Court: (1) grant Preliminary Approval; (2) certify for settlement purposes the Settlement Class, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) and (e); (3) approve the Notice Program and the form of the Notices; (4) approve the Claim Form and Claim process; (5) approve the Notice Program's opt-out and objection procedures; (6) appoint Plaintiffs as Class Representatives; (7) appoint as Class Counsel Jeff Ostrow, Mariya Weekes, and Scott Cole; (8) appoint Verita Global, LLC, as the Settlement Administrator; (9) continue to stay the Action pending Final Approval; (10) enjoin and bar all members of the Settlement Class from continuing in any litigation or asserting any claims against Defendants and the other Released Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's decision to grant Final Approval of the Settlement; and (11) schedule a Final Approval Hearing.

A proposed Preliminary Approval Order is attached as ***Exhibit C***.

Dated: December 2, 2024.                    Respectfully submitted,

*/s/ Jeff Ostrow*
Jeff Ostrow (pro hac vice)                  Mariya Weekes (pro hac vice)
**KOPELOWITZ OSTROW P.A.**                  **MILBERG COLEMAN BRYSON**
1 West Las Olas Blvd., Ste. 500             **GROSSMAN PHILLIPS PLLC**
Fort Lauderdale, FL 33301                   201 Sevilla Avenue, 2nd Floor
954-332-4200                                Coral Gables, FL 33134
ostrow@kolawyers.com                        786-879-8200
                                            mweekes@milberg.com

Scott Cole (pro hac vice)
**COLE & VAN NOTE**                         Joe Kendall, Texas Bar No. 11260700
555 12th Street, Ste. 2100                  **KENDALL LAW GROUP, PLLC**
Oakland, CA 94607                           3811 Turtle Creek Blvd., Ste. 1450
510-891-9800                                Dallas, TX 75219
sec@colevannote.com                         214-744-3000
                                            jkendall@kendalllawgroup.com

*Attorneys for Plaintiffs and the Proposed Settlement Class*

## CERTIFICATE OF CONFERRAL

I hereby certify Plaintiffs and Defendant conferred regarding the relief requested, and this

motion is unopposed.

*/s/ Jeff Ostrow*
Jeff Ostrow

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion was served on all counsel of record

on December 2, 2024 via CM/ECF, in accordance with LR5.3 and Fed. R. Civ. P. 5(b).

*/s/ Jeff Ostrow*
Jeff Ostrow