# EXHIBIT A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| J.W., a Minor, by and through her guardian Angela Johnson, CRYSTAL SCHULTZ, MICHELE EUSEBE, JUSTIN MEDINA, ARTHUR PODROYKIN, and KATHERINE CHAUDHRY, individually and on behalf of all others similarly situated, | CIVIL ACTION NO. 4:24-CV-02250 |
|      Plaintiffs, | |
| vs. | |
| LIVANOVA USA, INC. | |
|      Defendant. | |

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release ("Settlement" or "Agreement"),[1] dated as of December 2, 2024, is entered into between Plaintiffs, on behalf of themselves and the Settlement Class, on the one hand, and Defendant LivaNova USA, Inc., on the other hand. The Parties hereby agree to the following terms in full settlement of the Action, subject to a Final Approval Order entered by the Court.

### I.    Background

1.    Defendant is a medical device company based in Texas that manufacturers products for cardiac surgery and neuromodulation.

2.    In the course of operating its business, Defendant maintains a limited amount of personally identifiable information and personal health information pertaining to its employees and patients of Defendant's healthcare provider customers,

---

[1] All capitalized terms herein shall have the same meanings as those ascribed to them in Section II below.

3.      On or about November 19, 2023, Defendant discovered that an unauthorized party had obtained Private Information from its computer systems on or around October 26, 2023.

4.      The affected information varied by individual, but included names, telephone numbers, email and postal addresses, Social Security numbers, dates of births, medical information (e.g. treatment, condition, diagnosis, prescription, physician information, medical record numbers and device serial numbers), and health insurance information.

5.      On May 31, 2024, Defendant began sending out notice letters to affected persons, informing them that their Private Information had been compromised in the Data Security Incident.

6.      As a result of the Data Security Incident, commencing in June 2024, Defendant was named in six putative Related Class Actions that are materially and substantively identical, as they have overlapping claims, seek to represent the same putative class members, and arise out of the same Data Security Incident.

7.      Plaintiffs in the Related Actions conferred and agreed to move to consolidate the Related Actions and to appoint Class Counsel as Interim Co-Lead Counsel.

8.      Thereafter, the Court consolidated the Related Actions into this Action and appointed Mariya Weekes, Jeff Ostrow, and Scott Cole as Interim Co-Lead Class Counsel for the putative classes.

9.      On September 23, 2024, Plaintiffs filed a Consolidated Class Action Complaint in the Action.

10.      Thereafter, Class Counsel prepared written discovery, including interrogatories and requests for production. They also drafted a comprehensive Rule 30(b)(6) notice of deposition topics.

11.     Class Counsel also consulted with multiple data experts to understand how the breach occurred, the type of information involved, and whether the information was published on the Dark Web.

12.     The Parties began discussing settlement and scheduled a mediation with the Honorable Diane Welsh (Ret.), an experienced data breach mediator, on October 2, 2024, in Philadelphia, Pennsylvania.

13.     In advance of the mediation, Plaintiffs propounded informal discovery requests to learn as much as possible in advance of mediation. The Parties also exchanged mediation briefs outlining their positions with respect to liability, damages, and settlement-related issues.

14.     The Parties mediated on October 2, 2024, and after completing arms-length negotiations, agreed upon the material terms of a settlement.

15.     Thereafter, on October 4, 2024, the Parties filed a Joint Motion to Stay and Notice of Mediated Class Settlement.

16.     The Parties now agree to settle the Action and Related Actions entirely, without any admission of liability or wrongdoing, with respect to all Released Claims of the Releasing Parties. Defendant has entered into this Agreement to resolve all controversies and disputes arising out of or relating to the allegations made in the Complaint, and to avoid the litigation costs and expenses, distractions, burden, expense, and disruption to its business operations associated with further litigation. Defendant does not in any way acknowledge, admit to, or concede any of the allegations made in the Complaint (and similarly does not concede any of the allegations in the other complaints in the Related Actions), and expressly disclaims and denies any fault or liability, or any charges of wrongdoing that have been or could have been asserted in the Complaints. Nothing contained in this Agreement shall be used or construed as an admission of liability, and this

Agreement shall not be offered or received in evidence in any action or proceeding in any court or other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose other than to enforce the terms of this Agreement. Plaintiffs have entered into this Agreement to recover on the claims in the Complaint, and to avoid the risk, delay, and uncertainty of continued litigation. Plaintiffs do not in any way concede that the claims alleged in the Complaint lack merit or are subject to any defenses. The Parties intend this Agreement to bind Plaintiffs, Defendant, and all Settlement Class Members.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt and sufficient of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

II.    **Definitions**

16.    "Action" means the lawsuit entitled: *J.W., a Minor v. LivaNova USA, Inc.*, Case No. 4:24-CV-02250, filed in the United States District Court for the Southern District of Texas, and the Related Actions consolidated thereto.

17.    "Application for Attorneys' Fees, Costs, and Service Awards" means the application made with the Motion for Final Approval seeking Service Awards for Class Representatives and Class Counsel's attorneys' fees and reimbursement for costs.

18.    "CAFA Notice" means the notice required by the Class Action Fairness Act of 2008, 28 U.S.C. § 1715 ("CAFA").

19.    "Cash Payment" means compensation paid to Settlement Class Members who elected either Cash Payment A or Cash Payment B.

20.    "Cash Payment A" means the Settlement Class Member Benefit that Settlement Class members, who incurred documented losses, may elect under Section V herein.

4

21.    "Cash Payment B" means the Settlement Class Member Benefit consisting of a $100.00 cash payment, subject to *pro rata* increase or reduction, that Settlement Class Members may elect under Section V herein.

22.    "Claim" means the submission of a Claim Form by a Claimant.

23.    "Claim Form" means the proof of claim, substantially in the form attached hereto as ***Exhibit 4***, which may be modified, subject to the Parties' approval, to meet the requirements of the Settlement Administrator.

24.    "Claim Form Deadline" shall be 15 days before the initial scheduled Final Approval Hearing and is the last day by which a Claim Form may be submitted to the Settlement Administrator for a Settlement Class member to be eligible for a Cash Payment.

25.    "Claimant" means a Settlement Class member who submits a Claim Form.

26.    "Class Counsel" means: Mariya Weekes, Jeff Ostrow, and Scott Cole.

27.    "Class List" means a list of all individuals in the Settlement Class. Defendant shall prepare and provide the Class List to the Settlement Administrator for Notice using information in its records. Class List shall include the Settlement Class's names, email address (if available) postal address, and telephone number (if available).

28.    "Class Representatives" means Crystal Schultz, Michele Eusebe, Justin Medina, Arthur Podroykin, and Katherine Chaudhry.

29.    "Complaint" means the Consolidated Class Action Complaint filed in the Action on June 18, 2024.

30.    "Court" means the United States District Court for the Southern District of Texas and the Judge(s) assigned to the Action.

31.    "Credit/Data Monitoring" means up to three years of credit/data monitoring

Settlement Class Members may elect under Section V herein.

32.     "Data Security Incident" means the alleged incident that occurred on or around October 26, 2023, in which unauthorized third parties purportedly gained access to Settlement Class Members' Private Information from Defendant's systems.

33.     "Defendant" means LivaNova USA, Inc.

34.     "Defendant's Counsel" means Neil Gilman and Reiko Koyama of Hunton Andrews Kurth LLP.

35.     "Effective Date" of this Agreement means the last date by which all of the following have occurred: (a) The Parties have executed this Agreement; (b) The Parties have submitted to the Court and the Court has entered the Final Approval Order without material changes to the Parties' proposed Final Approval Order; and (c) The time for seeking rehearing, appellate or other review of the Final Approval Order has expired, or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing review, appeal, or certiorari could be taken has finally expired.

36.     "Email Notice" means the email notice of the Settlement, substantially in the form attached hereto as *Exhibit 1*, that the Settlement Administrator shall disseminate to the Settlement Class by email to those on the Class List for which Defendant possesses an email address.

37.     "Escrow Account" means the interest-bearing account to be established by the Settlement Administrator consistent with the terms and conditions described herein.

38.     "Final Approval" means the final approval of the Settlement, which occurs when the Court enters the Final Approval Order agreed to by the Parties, substantially in the form attached to the Motion for Final Approval.

39.    "Final Approval Hearing" means the hearing held before the Court during which the Court will consider granting Final Approval of the Settlement and the Application for Attorneys' Fees, Costs, and Service Awards.

40.    "Final Approval Order" means the final order that the Court enters granting Final Approval of the Settlement. The proposed Final Approval Order shall be agreed to by the Parties and will be attached as an exhibit to the Motion for Final Approval. The Final Approval Order also includes the orders, which may be entered separately, determining the amount of attorneys' fees and costs awarded to Class Counsel.

41.    "Long Form Notice" means the long form notice of the Settlement, substantially in the form attached hereto as *Exhibit 3*, that shall be posted on the Settlement Website and shall be available to Settlement Class Members by mail on request made to the Settlement Administrator.

42.    "Motion for Final Approval" means the motion that Plaintiffs and Class Counsel shall file with the Court seeking Final Approval of the Settlement.

43.    "Motion for Preliminary Approval" means the motion that Plaintiffs shall file with the Court seeking Preliminary Approval of the Settlement.

44.    "Notice" means the Email Notice, Postcard Notice, Long Form Notice, Settlement Website, and settlement telephone line that Plaintiffs and Class Counsel will ask the Court to approve in connection with the Motion for Preliminary Approval.

45.    "Notice Program" means the methods provided for in this Agreement for giving Notice and consists of the Email Notice, Postcard Notice, Long Form Notice, Settlement Website, and Settlement telephone line.

46.    "Notice of Deficiency" means the notice sent by the Settlement Administrator to a Settlement Class member who has submitted an invalid Claim.

47.    "Objection Period" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the Final Approval Hearing.

48.    "Opt-Out Period" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the Final Approval Hearing.

49.    "Party" means each of the Plaintiffs and the Defendant, and "Parties" means Plaintiffs and Defendant collectively.

50.    "Plaintiffs" means J.W., a minor by and through her guardian, Angela Johnson, Crystal Schultz, Michele Eusebe, Justin Medina, Arthur Podroykin, and Katherine Chaudhry.

51.    "Postcard Notice" means the postcard notice of the Settlement, substantially in the form attached hereto as *Exhibit 2*, that the Settlement Administrator shall disseminate to the Settlement Class by mail.

52.    "Preliminary Approval" means the preliminary approval of the Settlement, which occurs when the Court enters the Preliminary Approval Order, substantially in the form attached as an exhibit to the Motion for Preliminary Approval.

53.    "Preliminary Approval Order" means the order preliminarily approving the Settlement and proposed Notice Program.

54.    "Private Information" means Settlement Class members' information that may have been exposed in the Data Security Incident, which may include: names, telephone numbers, email and postal addresses, Social Security numbers, dates of birth, medical information (e.g. treatment, condition, diagnosis, prescription, physician information, medical record numbers and device serial numbers), and health insurance information, and other personally identifiable information

or personal health information.

55.    "Related Actions" means the following actions that were consolidated into the Action: *J.W., a minor by and through her guardian, Angela Johnson v. LivaNova USA, Inc*., Case No. 4:24-cv-02250*; Schultz v, LivaNova USA, Inc*., Case No. 4:24-cv-02276*; Eusebe v. LivaNova USA, Inc.*, Case No. 4:24-cv-0230; *Medina v. LivaNova, Inc.*, Case No. 4:24-cv-02357; *Podroykin v. LivaNova USA, Inc.*, Case No. 4:24-cv-02482; and *Chaudhry v. LivaNova USA, Inc.*, Case No. 4:24-cv-02506.

56.    "Releases" means the releases and waiver set forth in Section XIII of this Agreement.

57.    "Released Claims" means the claims described in Section XIII of this Agreement. "Released Parties" means Defendant, and its past, present, and future parents, subsidiaries, divisions, departments, affiliates, predecessors, successors and assigns, and any and all of their past, present, and future directors, officers, executives, officials, principals,  stockholders, heirs, agents, insurers, reinsurers, members, attorneys, accountants, actuaries, fiduciaries, advisors, consultants, representatives, partners, joint venturers, licensees, licensors, independent contractors, subrogees, trustees, executors, administrators, predecessors, successors and assigns, and any other person acting on Defendant's behalf, in their capacity as such. It is expressly understood that to the extent a Released Party is not a party to the Agreement, all such Released Parties are intended third-party beneficiaries of the Agreement.

58.    "Releasing Parties" means (i) Plaintiffs and all Settlement Class Members, (ii) each of their respective executors, representatives, heirs, predecessors, assigns, beneficiaries, affiliates, successors, bankruptcy trustees, guardians, joint tenants, tenants in common, tenants by the entireties, agents, attorneys, (iii) any entities in which a Plaintiff and/or other participating

Settlement Class Member has or had a controlling interest or that has or had a controlling interest in him, her, or it, (iv) any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of a Plaintiff and/or any other Settlement Class Member, and all those who claim through them or on their behalf, and (v) the respective past and present directors, governors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys, advisors, trustees, administrators, fiduciaries, consultants, service providers, representatives, successors in interest, assigns, beneficiaries, heirs, executors, accountants, accounting advisors, and auditors of any or all of the above persons or entities identified in (i)-(iv).

59.    "Service Awards" shall mean the payment the Court may award the Plaintiffs for serving as Class Representatives.

60.    "Settlement Administrator" means Verita Global or "Verita."

61.    "Settlement Administration Costs" means all costs and fees of the Settlement Administrator regarding Notice and settlement administration.

62.    "Settlement Class" means all persons in the United States whose Private Information was potentially compromised as a result of the Data Security Incident. Excluded from the Settlement Class are (a) all persons who are governing board members of Defendant; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff; and (d) any individual who timely and validly opts-out of the Settlement.

63.    "Settlement Class Member" means any member of the Settlement Class.

64.    "Settlement Class Member Benefit" means the Cash Payment and, if applicable, Credit Monitoring, elected by Settlement Class Members.

65.    "Settlement Fund" means the non-reversionary $1,205,000.00 cash fund that

Defendant has agreed to pay under the terms of the Settlement.

66.     "Settlement Website" means the website the Settlement Administrator will establish as a means for the Settlement Class members to submit Claim Forms and obtain notice and information about the Settlement, including hyperlinked access to this Agreement, the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees, Costs, and Service Awards, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted. The Settlement Website shall remain online and operable for six months after Final Approval.

67.     "Valid Claim" means a Claim Form submitted by a Settlement Class Member that is: (a) submitted in accordance with the provisions of the Settlement; (b) accurately, fully, and truthfully completed and executed, with all of the information requested in the Claim Form, by a Settlement Class Member; (c) signed physically or by e-signature by a Settlement Class Member personally, subject to the penalty of perjury; (d) returned via mail and postmarked by the Claim Form Deadline, or, if submitted online, submitted by 11:59 p.m. Eastern time on the Claim Form Deadline; and (e) determined to be valid by the Settlement Administrator. The Settlement Administrator may require additional information from the Claimant to validate the Claim, including, but not limited to, answers related to questions regarding the validity or legitimacy of the physical or e-signature. Failure to respond to the Settlement Administrator's Notice of Deficiency may result in a determination that the Claim is not a Valid Claim.

## III.   **Settlement Fund**

68.     Within 30 days after Preliminary Approval and receipt of all necessary information required to make payment (e.g., wiring instructions and a W-9 form), Defendant shall deposit or cause to be deposited $200,000.00 into the Escrow Account to allow the Settlement Administrator

to pay Settlement Administration Costs. Within 15 days after the Effective Date, Defendant shall deposit or cause to be deposited $1,005,000 into the Escrow Account.

69.     Under no circumstances shall Defendant be obligated to pay or cause to be paid more than one $1,205,000. No funds shall revert back to Defendant, except in the even this Agreement is voided, cancelled, or terminated, as described in Paragraphs 118-122 in this Agreement. In the event the Effective Date does not occur, no portion of the Settlement shall be returned to Defendant.

70.     The Settlement Fund shall be used to pay: (1) Settlement Class Member Benefits to those Settlement Class Members who submit a Valid Claim; (2) any Service Awards awarded to Class Representatives; (3) any attorneys' fees and costs awarded to Class Counsel; and (4) all Settlement Administration Costs.

71.     The funds in the Escrow Account shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l at all times since creation of the Escrow Account. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Escrow Account or otherwise shall be paid from the Escrow Account, including any taxes or tax detriments that may be imposed on Defendant, Defendant's Counsel, Plaintiffs, and/or Class Counsel with respect to income earned by the Escrow Account, for any period during which the Escrow Account does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise, shall be paid out of the Escrow Account. Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel shall have no liability or responsibility for any of the taxes. The Escrow Account shall indemnify and hold Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel harmless for all taxes (including, without limitation, taxes payable by reason of any such indemnification).

72.    Other than the payment of the Settlement Fund monies as described in Paragraph 68 of this Agreement, Defendant shall have no responsibility, financial obligation, or liability whatsoever with respect to the Settlement Fund of Escrow Account, investment of the Settlement Fund or Escrow Account, payment of federal, state, and local income, employment, unemployment, excise and any other taxes, penalties, interest or other charges related to taxes imposed on the Settlement Fund or Escrow Account or its disbursement, payment of administrative, legal, accounting, or other cost occasioned by the use or administration of the Settlement Fund or the Escrow Account.

**IV.    Certification of the Settlement Class**

73.    Plaintiffs shall propose and recommend to the Court that the Settlement Class be certified for Settlement purposes. Defendant agrees solely for purposes of the Settlement provided for in this Agreement, and the implementation of such Settlement, that this Action shall proceed as a class action; provided however, that if a Final Approval Order is not issued, then any certification shall be null and void and, for the avoidance of doubt, Defendant shall retain all rights to object to any future requests to certify a class. Plaintiffs and Class Counsel shall not reference this Agreement in support of any subsequent motion for class certification of any class in the Action.

**V.    Settlement Consideration**

74.    When submitting a Claim for a Cash Payment, Settlement Class Members must choose either Cash Payment A or Cash Payment B. Additionally, Settlement Class Members may elect to receive Credit Monitoring. If a Settlement Class Member does not submit a Valid Claim or opt-out, the Settlement Class Member will release his or her claims against Defendant without receiving a Settlement Class Member Benefit.

13

### a. Cash Payment A – Documented Losses

Settlement Class Members may submit a claim for a Cash Payment under this section for up to $5,000.00 per Settlement Class Member upon presentment of documented losses related to the Data Security Incident. To receive a documented loss payment, a Settlement Class Member must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documenting losses. Settlement Class Members will be required to submit reasonable documentation supporting the losses. Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the identity protection and credit monitoring services offered as part of the notification letter provided by Defendant or otherwise. If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected and the Settlement Class Member's Claim will be treated as if he or she elected Cash Payment B.

### b. Cash Payment B – Flat Cash Payment

As an alternative to Cash Payment A above, a Settlement Class Member may elect to receive Cash Payment B, which is a flat cash payment in the amount of $100.00 (subject to pro rata adjustment based upon total Claim submission).

### c. Credit/Data Monitoring

In addition to electing a Cash Payment, Settlement Class Members may elect up to three years of Credit/Data Monitoring. Credit/Data Monitoring has a value of $90.00 per year per Settlement Class Member.

75.    *Pro Rata* **Adjustments on Cash Payments** – Settlement Class Cash Payments will

14

be subject to a *pro rata* increase in the event the amount of Valid Claims is insufficient to exhaust the entire Settlement Fund. Similarly, in the event the amount of Valid Claims exhausts the amount of the Settlement Fund, the amount of the Cash Payments will be reduced *pro rata* accordingly. For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Settlement Fund first for payment of Credit Monitoring and then for Cash Payments. Any *pro rata* increases or decreases to Cash Payments will be on an equal percentage basis. In the unexpected event the value of Credit/Data Monitoring on its own exhausts the amount of the Settlement Fund, the length of the Credit/Data Monitoring provided will be reduced as necessary to bring the cost within the Settlement Fund.

76.     **Business Practice Changes** – Plaintiffs have received assurances that Defendant either has undertaken or will undertake reasonable steps to further secure its systems and environments. Defendant has provided confidential discovery regarding the number of individuals in the Settlement Class, the facts and circumstances of the Data Security Incident and Defendant's response thereto, and the changes and improvements that have been made or are being made to protect class members' Private Information.

## VI.     <u>Settlement Approval</u>

77.     Upon execution of this Agreement by all Parties and Class Counsel, Class Counsel shall file a Motion for Preliminary Approval. The proposed Preliminary Approval Order shall be attached to the motion as an exhibit and shall be in a form agreed to by Class Counsel and Defendant.

78.     The Motion for Preliminary Approval shall, among other things, request the Court: (1) preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class for settlement purposes only; (3)

approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (4) approve the Claim Form and Claim process; (5) approve the procedures for individuals in the Settlement Class to opt-out of or object to the Settlement; (6) stay the Action and Related Actions pending Final Approval of the Settlement; and (7) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, Class Counsel, and Defendant's Counsel.

## VII.    **Settlement Administrator**

79.    The Parties agree that, subject to Court approval, Verita shall be the Settlement Administrator. The Parties shall jointly oversee the Settlement Administrator. The Settlement Administrator shall fulfill the requirements set forth in the Preliminary Approval Order and the Agreement and comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution.

80.    The Settlement Administrator shall administer various aspects of the Settlement as described in the next paragraph and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, effectuating the Notice Program, handling the Claims process, administering the Settlement Fund, and distributing the Cash Payments to Settlement Class Members who submit Valid Claims.

81.    The Settlement Administrator's duties include to:

a.    Complete the Court-approved Notice Program by noticing the Settlement Class by Postcard Notice, sending Long Form Notices and paper Claim Forms on request from individuals in the Settlement Class, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Deficiency, and sending Settlement Class Member Benefits to Settlement Class Members who submit a Valid Claim;

16

b.      Establish and maintain the Settlement Fund in the Escrow Account approved by the Parties;

c.      Establish and maintain a post office box to receive opt-out requests from the Settlement Class, objections from Settlement Class Members, and Claim Forms;

d.      Establish and maintain the Settlement Website to provide important information about the Settlement and to receive electronic Claim Forms;

e.      Establish and maintain an automated toll-free telephone line for the Settlement Class to call with Settlement-related inquiries, and answer frequently asked questions of individuals in the Settlement Class who call with or otherwise communicate such inquiries;

f.      Respond to any mailed Settlement Class member inquiries;

g.      Process all opt-out requests from the Settlement Class;

h.      Provide weekly reports to Class Counsel and Defendant's Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notices of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information;

i.      In advance of the Final Approval Hearing, prepare a declaration confirming the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received, providing the names of each individual in the Settlement Class who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

j.      Distribute, out of the Settlement Fund, Cash Payments by electronic means

17

or by paper check;

k.     Send Settlement Class Members who elect Credit/Data Monitoring emails instructing how to activate their Credit/Data Monitoring service;

l.     Pay Court-approved attorneys' fees and costs, and Service Awards out of the Settlement Fund;

m.     Pay Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel;

n.     Pay any required taxes out of the Settlement Fund; and

o.     Any other Settlement Administration function at the instruction of Class Counsel and Defendant's Counsel, including, but not limited to, verifying that the Settlement Fund has been properly administered and that the Cash Payments have been properly distributed.

82.     The Notice Program and Notices will be reviewed and approved by the Settlement Administrator, but may be revised as agreed upon by the Parties prior to submission to the Court for approval. Immaterial revisions to the Notices may also be made prior to dissemination.

**VIII.     Notice to the Settlement Class**

83.     Defendant will serve or cause to be served the CAFA Notice no later than 10 days after this Agreement is filed with the Court.

84.     Defendant will make available to Class Counsel and the Settlement Administrator the Class List no later than 30 days after entry of the Preliminary Approval Order.

85.     Within 15 days following receipt of the Class List, the Settlement Administrator shall commence the Notice Program provided herein, using the forms of Notice approved by the Court. Notice shall be provided by email for all Settlement Class Members for whom Defendant possesses an email address.  Postcard Notice shall be disseminated via U.S. Mail to the Settlement

18

Class's mailing addresses, to the extent known, for all other Settlement Class Members. Notice shall also be published on the Settlement Website.

86.    The Notice shall include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for individuals in the Settlement Class to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Class Counsel and Defendant's Counsel shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. If the date or time for the Final Approval Hearing changes, the Settlement Administrator shall update the Settlement Website to reflect the new date. No additional notice to the Settlement Class is required if the date or time for the Final Approval Hearing changes.

87.    The Settlement Administrator shall establish the Settlement Website no later than the day before Notice is first initiated. The Settlement Administrator shall ensure the Settlement Website makes available the Court-approved online Claims Form that can be submitted directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator.

88.    **Opt-Outs** – The Long Form Notice also shall include a procedure for individuals in the Settlement Class to opt-out of the Settlement; and the Postcard Notice shall direct individuals in the Settlement Class to review the Long Form Notice to obtain the opt-out instructions. Individuals in the Settlement Class may opt-out of the Settlement Class at any time during the Opt-

Out Period by mailing a request to opt-out to the Settlement Administrator postmarked no later than the last day of the Opt-Out Period. The opt-out request must be personally signed by the Settlement Class member and contain the name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. Any individual in the Settlement Class who does not timely and validly request to opt out shall be bound by the terms of this Agreement even if he or she does not submit a Valid Claim.

89.     **Objections** – The Long Form Notice also shall include a procedure for the Settlement Class to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards, and the Postcard Notice shall direct the Settlement Class to review the Long Form Notice to obtain the objection instructions. Objections must be mailed to the Clerk of the Court, Class Counsel, Defendant's Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

90.     For an objection to be considered by the Court, the objection must also set forth:

   a.     the name of this Litigation (*J.W, v. LivaNova USA*, Case No. 4:24-cv-2250);

   b.     the objector's full name, mailing address, telephone number, and email address (if any);

   c.     the specific reasons for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

      d.     the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

      e.     the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards;

      f.     the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years;

      g.     any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

      h.     the identity of all counsel (if any) representing the objector and whether they will appear and address the Court at the Final Approval Hearing;

      i.     a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

      j.     a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

      k.     the objector's signature (an attorney's signature is not sufficient).

91.     Class Counsel and/or Defendant's Counsel may conduct limited discovery on any objector or objector's counsel.

92.     The Settlement Administrator shall perform reasonable address traces for those Postcard Notices that are returned as undeliverable. By way of example, a reasonable tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. No later than 45 days before the original date set for the Final Approval IIearing, the Settlement Administrator shall complete the re-mailing of Postcard Notice to those Settlement Class members whose new addresses were identified as of that time through address traces.

93.     The Notice Program shall be completed no later than 45 days before the original date set for the Final Approval Hearing.

## IX.     <u>Claim Form Process and Disbursement of Cash Payments</u>

94.     The Notice will explain to the Settlement Class that they may be entitled to a Settlement Class Member Benefit and how to submit a Claim Form.

95.     Claim Forms may be submitted online through the Settlement Website or through U.S. Mail by sending them to the Settlement Administrator at the address designated on the Claim Form.

96.     The Settlement Administrator shall collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in this Settlement and is thus a Valid Claim. The Settlement Administrator shall examine the Claim Form before designating the Claim as a Valid Claim to determine that the information on the Claim Form is reasonably complete. The Settlement Administrator shall have the sole authority to determine whether a Claim by any Claimant is a Valid Claim.

22

97.    The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate claims. No Settlement Class Member may submit more than one Claim Form. The Settlement Administrator shall identify any Claim Forms that appear to seek relief on behalf of the same Settlement Class Member. The Settlement Administrator shall use its best efforts to determine whether there is any duplication of claims, and if there is, contact the Settlement Class Member in an effort to determine which Claim Form is the appropriate one for consideration.

98.    The Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claim process. The Settlement Administrator may, in its discretion, deny in whole or in part any Claim Form to prevent actual or possible fraud or abuse. By agreement, the Parties can instruct the Settlement Administrator to take whatever steps it deems appropriate if the Settlement Administrator identifies actual or possible fraud or abuse relating to the submission of claims, including, but not limited to, denying in whole or in part any Claim to prevent actual or possible fraud or abuse. If any fraud is detected or reasonably suspected, the Settlement Administrator and Parties may require information from Claimants or deny Claims, subject to the supervision of the Parties and ultimate oversight by the Court.

99.    Claim Forms that do not meet the terms and conditions of this Settlement shall be promptly rejected by the Settlement Administrator and the Settlement Administrator shall advise the Claimant or Settlement Class Member of the reason(s) why the Claim Form was rejected. However, if the Claim Form is rejected for containing incomplete or inaccurate information, and/or omitting required information, the Settlement Administrator may send a Notice of Deficiency explaining what information is missing or inaccurate and needed to validate the Claim and have it submitted for consideration. The Settlement Administrator shall notify the Claimant using the

contact information provided in the Claim Form. The additional information and/or documentation can include, for example, answers to questions regarding the validity of the Claimant's physical or e-signature. A Claimant shall have until the Claim Form Deadline, or 15 days from the date the Notice of Deficiency is sent to the Claimant via mail and postmarked or via email, whichever is later, to reply to the Notice of Deficiency and provide the required information. If the Claimant timely and adequately provides the requested information and/or documentation, the Claim shall be deemed a Valid Claim and processed by the Settlement Administrator. If the Claimant does not timely and completely provide the requested information and/or documentation, the Settlement Administrator shall reduce or deny the Claim unless Defendant and Class Counsel otherwise agree.

100.    Where a good faith basis exists, the Settlement Administrator may reduce or reject a Claim for, among other reasons, the following:

        a.    Failure to fully complete and/or sign the Claim Form;

        b.    Illegible Claim Form;

        c.    The Claim Form is fraudulent;

        d.    The Claim Form is duplicative of another Claim Form;

        e.    The Claimant is not a Settlement Class Member;

        f.    The Claimant submitted a timely and valid request to opt out of the Settlement Class.

        g.    The person submitting the Claim Form requests that payment be made to a person or entity other than the Claimant for whom the Claim Form is submitted;

        h.    Failure to submit a Claim Form by the Claim Form Deadline; and/or

        i.    The Claim Form otherwise does not comply with the requirements of this Settlement.

101.    The Settlement Administrator's reduction or denial of a Claim is final, subject to the following dispute resolution procedures:

a.     The Settlement Administrator shall have 30 days from the Claim Form Deadline to approve or reject Claims based on findings of fraud or duplication.

b.     A request for additional information by sending a Notice of Deficiency shall not be considered a denial for purposes of this Paragraph.

c.     If a Claim is rejected for fraud or duplication, the Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. Class Counsel and Defendant's Counsel shall be provided with copies of all such notifications to Claimants.

d.     The Settlement Administrator's determination as to whether to approve, deny, or reduce a Claim shall be final and binding.

102.    The Settlement Administrator shall provide all information gathered in investigating Claims, including, but not limited to, copies of all correspondence and email and all notes of the Settlement Administrator, the decision reached, and all reasons supporting the decision, if requested by Class Counsel or Defendant's Counsel. Additionally, Class Counsel and Defendant's Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

103.    No person or entity shall have any claim against Defendant, Defendant's Counsel, Plaintiffs, the Settlement Class, Class Counsel, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Settlement.

104.    No later than 75 days after Final Approval or 75 days after the Effective Date, whichever is later, the Settlement Administrator shall distribute the Settlement Class Member Benefits.

105.    Cash Payments to Settlement Class Members will be made electronically or by paper check. Settlement Class Members with Valid Claims shall receive an email instructing them to select the type of payment they wish to receive. Upon issuance of the email, Settlement Class Members shall have 30 days to select their method of payment. Settlement Class Members who do not open their email or provide incorrect or incomplete electronic payment information shall receive a paper check in the mail. Settlement Class Members receiving payment by check shall have 180 days to negotiate the check.

106.    The Settlement Administrator will send an email to Settlement Class Members with Valid Claims that elected Credit/Data Monitoring with information on how to enroll in the Credit/Data Monitoring, including the activation code.

## X.    Final Approval Order and Final Judgment

107.    Plaintiffs shall file their Motion for Final Approval of the Settlement, inclusive of the Application for Attorneys' Fees, Costs, and Service Awards, no later than 45 days before the original date set for the Final Approval Hearing. At the Final Approval Hearing, the Court may choose to hear argument on Plaintiffs' Motion for Final Approval of the Settlement and Application for Attorneys' Fees, Costs, and Service Awards. In the Court's discretion, the Court also may hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement and/or to the Application for Attorneys' Fees, Costs, and Service Awards, provided the objectors submitted timely objections that meet all of the requirements listed in the Agreement.

108.    At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and final judgment thereon, and whether to grant the Application for Attorneys' Fees, Costs, and Service Awards. Such proposed Final Approval Order shall, among

other things:

a.      Determine that the Settlement is fair, adequate and reasonable;

b.      Finally certify the Settlement Class for settlement purposes only;

c.      Determine that the Notice Program satisfies Due Process requirements;

d.      Bar and enjoin all Releasing Parties from asserting any of the Released Claims at any time and in any jurisdiction, including during any appeal from the Final Approval Order; bar and enjoin all Releasing Parties from pursuing any Released Claims against Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order; and retain jurisdiction over the enforcement of the Court's injunctions;

e.      Release Defendant and the Released Parties from the Released Claims; and

f.      Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Defendant, Plaintiffs, all Settlement Class Members, and all objectors, to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

## XI.    **Service Awards, Attorneys' Fees and Costs**

109.    **Service Awards** – In recognition of the time and effort the Class Representatives expended in pursuing this Action and in fulfilling their obligations and responsibilities as Class Representatives, and of the relief conferred on all Settlement Class Members by the Settlement, Class Counsel shall request a Service Award for the Class Representatives in the amount not to exceed $2,500.00 each. If approved, the Service Awards shall be paid by the Settlement Administrator out of the Settlement Fund within 30 days of the Effective Date. The Service Award payments to the Class Representatives shall be separate and apart from their entitlement to benefits from the Settlement Fund.

110.    ***Attorneys' Fees and Costs*** – Class Counsel shall apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of costs. The attorneys' fees and cost awards approved by the Court shall be paid by the Settlement Administrator out of the Settlement Fund by wire transfer to an account designated by Class Counsel, within 30 days of the Effective Date.

111.    This Settlement is not contingent on approval of the request for attorneys' fees and costs or Service Awards, and if the Court denies the request or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. The provisions for attorneys' fees and costs and the Service Awards were not negotiated until after all material terms of the Settlement.

## XII.    Disposition of Residual Funds

112.    The Settlement is designed to exhaust the Settlement Fund. In the event there are funds remaining from uncashed checks in the Settlement Fund 20 days following the 180-day check negotiation period, a subsequent payment will be evenly made to all Settlement Class Members with approved claims for Cash Payments who cashed or deposited the initial payment they received, provided the average check amount is equal to or greater than $3.00. The distribution of this remaining Net Settlement Fund shall continue up to a maximum of $500 for any Settlement Class Member until the average check or digital payment in a distribution is less than $3.00, whereupon all remaining funds shall be distributed to an appropriate mutually agreeable *cy pres* recipient to be approved by the Court.

## XIII.    Releases

113.    As of the Effective Date, the Releasing Parties shall automatically be deemed to have fully, finally, and irrevocably released and forever discharged the Released Parties of, and

28

shall be forever barred from instituting, maintaining, or prosecuting, any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, asserted or unasserted, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, whether on behalf of themselves or others, that result from, arise out of, are based upon, or relate to (a) the Data Security Incident; or (b) any of the alleged violations of laws or regulations cited in the Complaint, the Action, or the Related Actions.

114.    Plaintiffs and Settlement Class Members covenant and agree they will not take any step whatsoever to assert, sue on, continue, pursue, maintain, prosecute, or enforce any Released Claim, directly or indirectly, whether on behalf of themselves or others, against any of the Released Parties in any jurisdiction.

115.    Individuals in the Settlement Class who opt-out of the Settlement prior to the Opt-Out Deadline do not release their claims and will not obtain any benefits under the Settlement. With respect to the Released Claims, Plaintiffs and Settlement Class Members, expressly understand and acknowledge it is possible that unknown economic losses or claims exist or that present losses may have been underestimated in amount or severity. Plaintiffs and Settlement Class Members explicitly took that into account in entering into this Agreement, and a portion of the consideration and the mutual covenants contained herein, having been bargained for between Plaintiffs and Defendant with the knowledge of the possibility of such unknown claims for economic loss, were given in exchange for a full accord, satisfaction, and discharge of all such claims. Consequently, Plaintiffs and the Settlement Class Members shall be deemed to have, and by operation of the Settlement shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code

(to the extent it is applicable, or any other similar provision under federal, state or local law to the extent any such provision is applicable), which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

116.     Plaintiffs or Settlement Class Members may hereafter discover facts other than or different from those that he or she knows or believes to be true with respect to the subject matter of the claims released herein, or the law applicable to such claims may change. Nonetheless, each of those individuals expressly agrees that, as of the Effective Date, he or she shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed by this Agreement. Further, each of those individuals agrees and acknowledges that he or she shall be bound by this Agreement, including by the release herein and that all of their claims in the Action and Related Actions shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he or she never receives actual notice of the Settlement and/or never receives a Cash Payment from the Settlement.

117.     Upon the Effective Date: (a) this Settlement shall be the exclusive remedy for any and all Released Claims of Plaintiffs and Settlement Class Members; and (b) Plaintiffs and Settlement Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting any Released Claim against the Released Parties, whether on behalf of Plaintiffs, any Settlement Class Member or others, in any jurisdiction,

including in any federal, state, or local court or tribunal.

**XIV.  Termination of Settlement**

118.    This Agreement shall be subject to and is expressly conditioned on the occurrence of all of the following events:

    a.    Court approval of the Settlement consideration set forth in Section V and the Releases set forth in Section XIII of this Agreement;

    b.    The Court has entered the Preliminary Approval Order substantially in the form attached to the Motion for Preliminary Approval;

    c.    The Court has entered the Final Approval Order substantially in the form agreed to by the Parties and attached to the Motion for Final Approval, and all objections, if any, are overruled, and all appeals taken from the Final Approval Order are resolved in favor of Final Approval; and

    d.    The Effective Date has occurred.

119.    If any of the conditions specified in the preceding paragraph are not met, then this Agreement shall be cancelled and terminated.

120.    Defendant shall have the option to terminate this Agreement if more than 1% of the Settlement Class opt-out of the Settlement. Defendant shall notify Class Counsel and the Court of its intent to terminate this Agreement pursuant to this paragraph within 10 days after the end of the Opt-Out Period, or the option to terminate shall be considered waived.

121.    In the event this Agreement is terminated or fails to become effective, then the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement, and the parties shall jointly file a status report in the Court seeking to reopen the Action.  In such event, the terms and provisions of this Agreement shall have no further force and

31

effect with respect to the Parties and shall not be used in this case or in any other action or proceeding for any other purpose, and any order entered by this Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

122.    In the event this Agreement is terminated or fails to become effective, all funds in the Settlement Fund shall be promptly returned to Defendant. However, Defendant shall have no right to seek from Plaintiffs, Class Counsel, or the Settlement Administrator the Settlement Administration Costs paid by Defendant. The Settlement Administrator all remaining amounts in the Settlement Fund to Defendant within 21 days of termination.

## XV.    Effect of Termination

123.    The grounds upon which this Agreement may be terminated are set forth in Section XIV. In the event of a termination, this Agreement shall be considered null and void; all of Plaintiffs', Class Counsel's, Defendant', and Defendant's Counsel's obligations under the Settlement shall cease to be of any force and effect; and the Parties shall return to the status quo ante in the Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement rights, claims, and defenses will be retained and preserved.

124.    In the event the Settlement is terminated in accordance with the provisions of this Agreement, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose. In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court.

## XVI.    No Admission of Liability

125.    This Agreement reflects the Parties' compromise and settlement of disputed claims.

32

This Agreement shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law. Defendant has denied and continues to deny each of the claims and contentions alleged in the Complaint. Defendant specifically denies that a class could or should be certified in the Action or Related Actions for litigation purposes. Defendant does not admit any liability or wrongdoing of any kind, by this Agreement or otherwise. Defendant has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could possibly have been asserted in the Action or Related Actions.

126.    Class Counsel believe the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel fully investigated the facts and law relevant to the merits of the claims, conducted discovery, and conducted independent investigation of the alleged claims. Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class.

127.    This Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties in connection with the negotiations of this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

128.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission

33

of, or evidence of, the validity of any claim made by the Plaintiffs or the Settlement Class, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency, or other tribunal.

129.    In addition to any other defenses Defendant may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

**XVII.  Miscellaneous Provisions**

130.    Gender and Plurals. As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

131.    Binding Effect. This Agreement shall be binding upon, and inure to and for the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

132.    Cooperation of Parties. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

133.    Obligation to Meet and Confer. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have met and conferred in an attempt to resolve the dispute.

134.    Integration and No Reliance. This Agreement constitutes a single, integrated

written contract expressing the entire agreement of the Parties relative to the subject matter hereof. This Agreement is executed without reliance on any covenant, agreement, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

135.    <u>No Conflict Intended</u>. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

136.    <u>Governing Law</u>. Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the state of Texas, without regard to the principles thereof regarding choice of law.

137.    <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required.

138.    <u>Jurisdiction</u>. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of the agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose. The Court shall retain jurisdiction over the enforcement of the Court's injunction barring and enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released

Claims against the Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order.

139.   <u>Notices</u>. All notices provided for herein, shall be sent by email with a hard copy sent by first class mail to:

If to Plaintiffs or Class Counsel:

Jeff Ostrow
Kopelowitz Ostrow P.A.
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
ostrow@kolawyers.com

Mariya Weekes
Milberg Coleman Bryson
Phillips & Grossman PLLC
201 S. Sevilla Avenue, Ste. 200
Coral Gables, FL 33134
mweekes@milberg.com

Scott Cole
Cole & Van Note
555 12th Street, Ste. 2100
Oakland, CA 94607
sec@colevannote.com

If to Defendant or Defendant's Counsel:

Neil Gilman
Hunton Andrews Kurth LLP
2200 Pennslyvania Ave., N.W
Washington, D.C. 20037
ngilman@hunton.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

140.   <u>Modification and Amendment</u>. This Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and Defendant's Counsel and, if the

Settlement has been approved preliminarily by the Court, approved by the Court.

141.    No Waiver. The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

142.    Authority. Class Counsel (for Plaintiffs and the Settlement Class), and Defendant's Counsel (for Defendant), represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation, or entity included within the definitions of Plaintiffs and Defendant to all terms of this Agreement. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

143.    Agreement Mutually Prepared. Neither Plaintiffs nor Defendant shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

144.    Independent Investigation and Decision to Settle. The Parties understand and acknowledge they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. All Parties recognize and acknowledge they reviewed and analyzed data that they and their experts used to make certain determinations, arguments, and settlement positions. The Parties agree this Settlement is fair, reasonable, and adequate, and will

37

not attempt to renegotiate or otherwise void or invalidate or terminate the Settlement irrespective of what any unexamined data later shows. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

145.    <u>Receipt of Advice of Counsel</u>. Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

146.    <u>Exhibits</u>. The exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

147.    <u>Representations/Warranties Regarding Other Potential Plaintiffs or Legal Claims</u>. Class Counsel represent and warrant that they do not represent any clients, or have knowledge of any potential clients, with claims or potential claims against the Released Parties aside from the Released Claims. Plaintiffs and Class Counsel each represent and warrant that neither of them is aware of any potential plaintiff, or any attorney other than Class Counsel, who intends to make demands or bring litigation against the Released Parties. Plaintiffs and Class Counsel each further represent and warrant that neither of them has been notified or otherwise informed of any such intention or consideration thereof. Plaintiffs and Class Counsel each further represent and warrant that neither of them has been referred to any other attorney or any other individual alleging to have,

asserting, pursuing, or seeking to pursue any claims against the Released Parties. Class Counsel represent and warrant that they have removed all advertisements, including social media posts, soliciting potential clients to pursue claims against Defendant or any of the Released Parties. Class Counsel further represent and warrant that they have removed any other publications, including social media posts, announcing, publicizing, or describing the Released Claims, to the extent published by Class Counsel.

148.    <u>Bar to Future Suits</u>. Upon entry of the Final Approval Order, the Releasing Parties shall be enjoined from prosecuting any Released Claim in any proceeding against the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by this Agreement or by the Final Approval Order. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this paragraph.

*Signature Page to Follow*

**PLAINTIFFS**

*crystal schultz*
crystal schultz (Nov 25, 2024 10:01 EST)
**CRYSTAL SCHULTZ**

*Michele Eusebe*
**MICHELE EUSEBE**

justin medina (Nov 26, 2024 16:04 PST)
**JUSTIN MEDINA**

Arthur Maverick (Nov 26, 2024 15:59 CST)
**ARTHUR PODROYKIN**

Signed by:
katherine.chaudhry@gmail.com
DC0BAE4E52E148C
**KATHERINE CHAUDHRY**

**CLASS COUNSEL**

*Jeffrey Ostrow*
Jeffrey Ostrow (Nov 26, 2024 19:28 EST)
**JEFF OSTROW**
KOPELOWITZ OSTROW P.A.


*Mariya Weekes*
Mariya Weekes (Nov 26, 2024 19:29 EST)
**MARIYA WEEKES**
MILBERG COLEMAN BRYSON
PHILLIPS & GROSSMAN PLLC


**SCOTT COLE**
COLE & VAN NOTE, P.A.


**DEFENDANT**

*Michael Hutchinson*

By: Michael Hutchinson
Its   Chief Legal Counsel


**DEFENDANT'S COUNSEL**

**NEIL GILMAN**
HUNTON ANDREWS KURTH LLP

41

# EXHIBIT 1
# (EMAIL NOTICE)

To:
From:
Subject: LivaNova Data Breach Settlement

ClaimID:
PIN:

**If your private information was compromised in a data security incident experienced by LivaNova USA, Inc. on or around October 26, 2023, you may be entitled to benefits from this class action settlement.**

*A federal district court authorized this Notice.*

A $1,205,000 Settlement has been reached with Defendant LivaNova USA, Inc. in a class action lawsuit, *J.W., a Minor, et al. v. LivaNova USA, Inc.*, Case No. 4:24-cv-02250 (S.D. Tex), relating to an alleged incident that occurred on or around October 26, 2023, during which unauthorized third parties purportedly gained access to Private Information from LivaNova's systems.

**Who is included?** LivaNova's records indicate that you are included in the Settlement Class. More specifically, the Settlement Class includes all persons in the United States whose Private Information was potentially compromised as a result of the Data Security Incident.

**What does the Settlement provide?** The Settlement provides Settlement Class Members with the right to claim a Cash Payment for either (A) reimbursement of documented losses (maximum payment of up to $5,000) **or** (B) a $100 flat Cash Payment (subject to *pro rata* increase or decrease) from the proposed Settlement; **and** up to three years of Credit/Data Monitoring.

All Cash Payments are subject to a *pro rata* increase or decrease depending on the total value of all Claims received.

**How do I get Settlement Class Member Benefits?** You must complete and submit a Claim Form by <mark>Month XX, 2024</mark>. You may submit a Claim Form, using the ClaimID and PIN above, online at www.[website].com. Claim Forms may also be printed from the Settlement Website or requested by calling the Settlement Administrator and submitted by mail and postmarked by <mark>Month XX, 2024</mark>.

**What are my other options?** If you do not want to be legally bound by the Settlement, you must opt-out of the Settlement by <mark>Month XX, 2024</mark>. Unless you opt-out, you will not be able to sue LivaNova or released parties for any claim released by the Settlement or the related actions. If you do not opt-out of the Settlement, you may object to the Settlement and notify the Court that you or your lawyer intend to appear at the Court's Final Approval Hearing. Objections are due <mark>Month XX 2024</mark>.

**The Court's Final Approval Hearing.** The Court will hold a Final Approval Hearing in this case on <mark>Month XX, 2024, at X:X0 X.m</mark>. at the U.S. District Court Southern District of Texas. At this hearing, the Court will decide whether to approve: (1) the Settlement; (2) $2,500 for Service Awards to each Class Representative; and (3) Class Counsel's request for attorneys' fees of up to 33.33% of the Settlement Fund or $401,666.67, and reimbursement of litigation costs. You may appear at the hearing, but you do not have to. You also may hire your own attorney, at your own expense, to appear or speak for you at the hearing.

**Want more information?** For more information, including a copy of the Settlement Agreement and other important documents, and a more detailed description of the Settlement, the benefits available, and the releases, please go to <mark>www.[website].com</mark> or call 1-XXX-XXX-XXXX.

# EXHIBIT 2
# (POSTCARD NOTICE)

First-Class
Mail
US Postage
Paid
Permit #___

*J.W., a Minor, et al. v. LivaNova USA,*
*Inc. Settlement Administrator*
P.O. Box
City, State ZIP-XXXX

**«Barcode»**

Postal Service: Please do not mark barcode

«ClassMemberID»
«First1» «Last1»
«co»
«Addr1» «Addr2»
«City», «St» «Zip»
«Country»

LEGAL NOTICE

**If your private information was compromised in a data security incident experienced by LivaNova USA, Inc. on or around October 26, 2023, you may be entitled to benefits from this class action settlement.**

*A federal district court authorized this Notice.*

**1-XXX-XXX-XXXX**
**www.[website].com**



A $1,205,000 Settlement has been reached with Defendant LivaNova USA, Inc. in a class action lawsuit, *J.W., a Minor, et al. v. LivaNova USA, Inc.*, Case No. 4:24-cv-02250 (S.D. Tex), relating to an alleged incident that occurred on or around October 26, 2023, in which unauthorized third parties purportedly gained access to private information from LivaNova's systems.

**Who is included?** LivaNova's records indicate that you are included in the Settlement Class. More specifically, the Settlement Class includes all persons in the United States whose Private Information was potentially compromised as a result of the Data Security Incident.

**What does the Settlement provide?** The Settlement provides Settlement Class Members with the right to claim a Cash Payment for either (A) reimbursement of documented losses (maximum payment of up to $5,000) **or** (B) approx. $100 flat cash payment (subject to *pro rata* increase or decrease) from the proposed Settlement; **and** up to three years of Credit/Data Monitoring.

All Cash Payments are subject to a pro rata increase or decrease depending on the total value of all Claims received.

**How do I get Settlement benefits?** You must complete and submit a Claim Form by <mark>Month XX, 2024</mark>. You may submit a Claim Form online at www.[website].com. Claim Forms may also be printed from the website or requested by calling the Settlement Administrator and submitted by mail and postmarked by <mark>Month XX, 2024.</mark>

**What are my other options?** If you do not want to be legally bound by the Settlement, you must opt-out of the Settlement by <mark>Month XX, 2024</mark>. Unless you opt-out, you will not be able to sue LivaNova or released parties for any claim released by the Settlement or the related actions. If you do not opt-out of the Settlement, you may object to the Settlement and notify the Court that you or your lawyer intend to appear at the Court's Final Approval Hearing. Objections are due <mark>Month XX 2024.</mark>

**The Court's Final Approval Hearing.** The Court will hold a Final Approval Hearing in this case on <mark>Month XX, 2024, at X:X0 X.m.</mark> at the U.S. District Court Southern District of Texas. At this hearing, the Court will decide whether to approve: (1) the Settlement; (2) $2,500 for Service Awards to each Class Representative; and (3) Class Counsel's request for attorneys' fees of up to 33.33% of the Settlement Fund or $401,666.67 in attorneys' fees, and reimbursement of litigation costs. You may appear at the hearing, but you do not have to. You also may hire your own attorney, at your own expense, to appear or speak for you at the hearing.

For more information, including a copy of the Settlement Agreement and other important documents, and a more detailed description of the settlement, the benefits available, and the releases, please go to www.[website].com or call 1-XXX-XXX-XXXX.

Postage
Required

J.W., a Minor v. LivaNova USA
c/o Settlement Administrator
PO Box XXXX
(city, state, zip code)

# EXHIBIT 3
# (LONG FORM NOTICE)

# Notice of LivaNova USA Data Security Incident Class Action Settlement

**If your private information was compromised in a data security incident experienced by LivaNova USA, Inc. on or around October 26, 2023, you may be entitled to benefits from this class action settlement.**

A federal court has authorized this Notice. This is <u>not</u> a solicitation from a lawyer.

**Please read this Notice carefully and completely, your legal rights are affected whether you act or don't act.**

## <u>THIS NOTICE MAY AFFECT YOUR RIGHTS. PLEASE READ IT CAREFULLY.</u>

- A Settlement has been reached in a class action lawsuit against LivaNova USA. Inc. ("LivaNova" or "Defendant"). The Settlement resolves claims brought by individuals impacted by the Data Security Incident that occurred on or around October 26, 2023, during which unauthorized third parties purportedly gained access to Private Information from LivaNova's systems ("Data Security Incident").

- You may be eligible to receive a Cash Payment for either (A) reimbursement for documented losses (maximum payment of up to $5,000) or (B) a $100 flat cash payment from the proposed Settlement. All Cash Payments are subject to a *pro rata* increase or decrease depending on the total value of all Claims received.

- In addition to the Cash Payment, you may elect up to three years of Credit/Data Monitoring services.

- To receive a Cash Payment and/or Credit/Data Monitoring services, you must complete and submit a Claim Form.

- Please read this notice carefully. Your legal rights will be affected, and you have a choice to make now.

| Summary of Your Legal Rights and Options | | Deadline |
|---|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a Cash Payment and/or Credit/Data Monitoring. Please note that submitting a Claim Form will <u>not</u> automatically enroll you in Credit/Data Monitoring Services. To enroll, you must follow the instructions that will be sent to you using the email address you provided after the Settlement is approved. | Online or Postmarked by [DATE]. |
| **EXCLUDE YOURSELF BY OPTING OUT** | Get no Cash Payment and/or Credit/Data Monitoring. Keep your right to file your own lawsuit against the Defendant for the same claims resolved by this Settlement. | Postmarked by [DATE]. |
| **OBJECT TO THE SETTLEMENT AND/OR ATTEND THE FINAL APPROVAL HEARING** | Tell the Court the reasons why you do not believe the Settlement should be approved. You can also ask to speak to the Court at the Final Approval Hearing on [DATE] about the fairness of the Settlement, with or without your own attorney. | Received by [DATE]. |
| **DO NOTHING** | Get no Cash Payment and/or Credit/Data Monitoring and be bound by the terms of the Settlement. | |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Cash Payments will be made and Credit/Data Monitoring services will be available if the Court approves the Settlement after any appeals are resolved.

**Questions? Go to www.XXXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX.**

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**................................................................................................................3
1. Why did I get this notice?
2. What is this lawsuit about?
3. What is a class action?
4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT** .................................................................................................4
5. Who is in the settlement?
6. Are there exceptions to being included?
7. What should I do if I am not sure whether I am included?

**THE SETTLEMENT BENEFITS**................................................................................................4
8. What does the Settlement provide?
9. What can I get from the Settlement?
10. What am I giving up if I stay in the class?

**HOW TO GET SETTLEMENT BENEFITS – MAKING A CLAIM**..............................................5
11. How can I get a Cash Payment?
12. How can I get Credit/Data Monitoring?
13. When will I get my Cash Payment or Credit/Data Monitoring?

**THE LAWYERS REPRESENTING YOU** ...................................................................................5
14. Do I have a lawyer in this case?
15. Should I get my own lawyer?
16. How will the lawyers be paid?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** .............................................................6
17. How do I get out of the Settlement?
18. If I am a Settlement Class Member and don't opt-out, can I sue the Defendant for the same thing later?
19. What happens if I opt-out?

**COMMENTING ON OR OBJECTING TO THE SETTLEMENT** .................................................7
20. How do I tell the Court I don't like the settlement?
21. What's the difference between objecting and opting out?

**THE COURT'S FINAL APPROVAL HEARING** ........................................................................8
22. When and where will the Court decide whether to approve the Settlement?
23. Do I have to come to the Final Approval Hearing?
24. May I speak at the hearing?

**IF I DO NOTHING**....................................................................................................................9
25. What happens if I do nothing at all?

**GETTING MORE INFORMTION**...............................................................................................9
26. Are more details about the Settlement available?
27. How do I get more information?

# BASIC INFORMATION

## 1. Why did I get this Notice?

You received this Notice because you have been identified as a person whose Private Information may have been accessed or exposed during the Data Security Incident. Similarly situated individuals brought a proposed class action lawsuit against LivaNova, alleging LivaNova was negligent due to its data security practices. LivaNova denied the allegations and denied that it would be found liable. The Parties have now reached a proposed Settlement of the lawsuit and related actions.

A court authorized this Notice because you have a right to know about your rights under the proposed class action Settlement before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and after objections and appeals are resolved, a Settlement Administrator appointed by the Court will distribute the Settlement Class Member Benefits that the Settlement allows, and the pending legal claims against the Defendant will be released and dismissed. Please note that these claims will be released even if you do not file a Claim or receive any Settlement compensation (unless you timely opt-out of the Settlement).

This Notice explains the lawsuit, the Settlement, your rights, what Settlement Class Member Benefits are available, who is eligible for them, and how to get them. The case is *J.W., a minor, et al. v. LivaNova USA* Case No. 4:24-cv-2250 currently pending in the United States District Court for the Southern District of Texas. The Honorable Alfred H. Bennett, United States District Court Judge, is in charge of this case.

## 2. What is this lawsuit about?

The lawsuit claims that (1) on or about November 19, 2023, LivaNova discovered that an unauthorized third-party obtained Private Information from its computer systems ("Data Security Incident"); (2) the Data Security Incident exposed certain Private Information pertaining to LivaNova's customers and employees; (3) and LivaNova began notifying affected persons about the Data Security Incident on May 31, 2024. The Defendant denies any allegations of wrongdoing and denies that Plaintiffs would prevail or be entitled to any relief should this matter continue to be litigated.

The affected Private Information varied by impacted individual and included data such as name, contact information (e.g., phone number, email and postal address), Social Security number, date of birth, medical information (e.g., treatment, condition, diagnosis, prescription, physician, medical record number and device serial number), and health insurance information.

## 3. What is a class action?

In a class action one or more people called "Class Representatives" sue on behalf of themselves and other people who have similar claims. This group of people is called the "class," and the people in the class are called "Settlement Class members" or the "Settlement Class." One court resolves the issues for all Settlement Class Members, except for people who exclude themselves from the class. The persons who sued here (J.W., a minor, by and through her guardian Angela Johnson, Crystal Schultz, Michele Eusebe, Justin Medina, Arthur Podroykin, and Katherine Chaudhry) are called the Plaintiffs. The company they sued—LivaNova USA, Inc.—is called the Defendant.

### 4. Why is there a Settlement?

The Court did not decide in favor of Plaintiffs or Defendant. Instead, both sides agreed to a Settlement. That way, they avoid the costs and risks of a trial, and Settlement Class Members can get benefits or compensation. The Class Representatives and Class Counsel think the Settlement is in the best interest of the Settlement Class.

## WHO IS IN THE SETTLEMENT?

### 5. Who is in the Settlement?

The Settlement Class is defined as: "all persons in the United States whose Private Information was potentially compromised as a result of the Data Security Incident. Excluded from the Settlement Class are (a) all persons who are governing board members of Defendant; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff; and (d) any individual who timely and validly opts-out of the Settlement."

### 6. Are there exceptions to being included?

Yes, the following are not included in the Settlement Class: (a) all persons who are governing board members of Defendant; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff; and (d) Settlement Class Members who submit a valid request to opt-out of the Settlement by the Opt-Out Deadline.

### 7. What should I do if I am not sure whether I am included?

If you are not sure whether you are included in the Settlement Class, you can ask for free help by calling the Settlement Administrator, at 1-XXX-XXX-XXXX or you can visit www.[website].com for more information.

## THE SETTLEMENT BENEFITS

### 8. What does the Settlement provide?

Under the Settlement, the Defendant will establish a non-reversionary all cash Settlement Fund in the amount of $1,205,000. These funds will be used to pay for all Valid Claims made by Settlement Class Members, Settlement Administration Costs, any Court-awarded Service Awards to the Class Representatives, and any Court-awarded attorneys' fees and costs. Any remaining funds will be sent to an appropriate mutually agreeable *cy pres* recipient to be approved by the court.

### 9. What can I get from the Settlement?

Settlement Class Members may file a Claim for one or more of the following Settlement Class Member Benefits.

**CASH PAYMENT**: Settlement Class Members may submit a Claim for a Cash Payment from the Settlement Fund. You may choose ONE of the following two Cash Payment options.

<u>Cash Payment A</u> – Documented Losses. Settlement Class Members may submit a claim for reimbursement of documented monetary losses fairly traceable to the Data Security Incident up to $5,000 per individual ("Documented Losses"). Documented Losses may include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Security Incident through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. You will not be reimbursed for expenses if you have been previously reimbursed for the same expenses by another source. **You must provide proper documentation to make a successful claim for Documented Losses.**

OR

**Cash Payment B** – Flat Cash Payment. As an alternative to Cash Payment A above, you may elect to receive Cash Payment B, which is a flat cash payment in the amount of approx. $100.

Claims for Cash Payments are subject to a *pro rata* increase or decrease depending upon the number of Valid Claims filed and approved.

**CREDIT/DATA MONITORING SERVICES**: In addition to a Cash Payment, Settlement Class Members may submit a Claim for up to three years of Credit/Data Monitoring services.

### 10. What am I giving up if I stay in the Class?

If you are a Settlement Class Member and you do not opt-out of the Settlement, you will give up your right to sue, continue to sue, or be part of any other lawsuit against Defendant or other released parties concerning the claims released by this Settlement. These claims will be released even if you do not file a Claim or receive any Settlement compensation. The Settlement Agreement describes the legal claims that you give up if you remain in the Settlement Class. The entire text of the Settlement Agreement can be viewed at www.[website].com.

## How to Get Settlement Benefits – Making A Claim

### 11. How can I get a Cash Payment?

You must complete and submit a Claim Form by **[DATE]**. Claim Forms may be submitted online at www.[website].com or printed from the website and mailed to the address on the form.

Be sure to read the Claim Form instructions carefully, include all required information, and your signature.

The Settlement Administrator will review your claim to determine the validity and amount of your payment.

This is a closed class. The benefits are available only to Settlement Class Members with a unique ID.  All claims submitted by non-Settlement Class Members will be rejected.

### 12. How can I get Credit/Data Monitoring?

You must complete and submit a Claim Form by **[DATE]**. Claim Forms may be submitted online at www.[website].com or printed from the website and mailed to the address on the form.  Please note that submitting a Claim Form will not automatically enroll you in Credit/Data Monitoring Services. To enroll, you must follow the instructions that will be sent to you using the email address you provided after the Settlement is approved.

### 13. When will I get my Cash Payment or Credit/Data Monitoring?

The Court will hold a hearing on [DATE], to decide whether to approve the Settlement. Cash Payments and Credit/Data Monitoring services will be made after the Settlement is approved and becomes final (meaning there is no appeal from the order approving the Settlement). Updates regarding the Settlement will be posted on the Settlement website, www.[website].com.

## THE LAWYERS REPRESENTING YOU

### 14. Do I have a lawyer in this case?

Jeff Ostrow of Kopelowitz Ostrow P.A., Mariya Weekes of Milberg Coleman Bryson Phillips & Grossman PLLC, and Scott Cole of Cole & Van Note have been appointed to represent the Settlement Class. These lawyers are called Class Counsel. You will not be charged for their services.

### 15. Should I get my own lawyer?

If you want your own lawyer, you may hire one, but you will be responsible for any payment for that lawyer's services. For example, you can ask your own lawyer to appear in court for you if you want someone other than Class Counsel to speak for you. You may also appear for yourself without a lawyer.

### 16. How will the lawyers be paid?

The attorneys representing the Settlement Class have not yet received any payment for their legal services or any reimbursement of the costs or out-of-pocket expenses they have incurred. Class Counsel plans to ask the Court to award attorney's fees from the Settlement Fund. The request for attorneys' fees, costs, and expenses will be for up to 33.33% of the Settlement Fund or $401,666.67.

The Settlement Class is represented by the Plaintiffs named above, some of whom have been designated as the "Class Representatives." Class Representatives may make a Claim for Settlement Class Member Benefits, like all other Settlement Class Members, but will also each request a $2,500 award for the efforts they have expended on behalf of the Settlement Class.

The Court will determine whether to approve the amount of attorneys' fees, costs, and expenses requested by Class Counsel, as well as the amount of the Service Awards for the Class Representatives. As part of Plaintiffs' Motion for Final Approval of the Settlement, Class Counsel will file an Application for Attorneys' Fees, Costs, and Service Awards no later than [DATE]. Once filed, the Motion for Final Approval will be available on the Settlement Website, www.[website].com.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 17. How do I get out of the Settlement?

If you are a Settlement Class Member and you do not want the benefits from the Settlement, and you want to keep your right, if any, to sue the Defendant or released parties on your own about the legal issues in this case, then you must take steps to get out of the Settlement. This is called excluding yourself from—or "opting out" of—the Settlement Class.

You may opt-out of the Settlement by [DATE]. To opt-out, you must send your request to the address below that contains the following information:

- Your full name, address, telephone number, email address (if any) and must be personally signed by you;
- A clear statement indicating your request to opt-out of the Settlement Class and the Settlement.

You should also include the following in your letter or postcard: the name of this Litigation, or a decipherable approximation (*J.W v. LivaNova USA, Inc.* Case No. 4:24-cv-2250).

You must mail your opt-out request via First-Class postage prepaid U.S. Mail, postmarked no later than [DATE] to:

*J.W. v. LivaNova USA Settlement Administrator*
P.O. Box XXXX
XXXXXX

If you fail to include the required information, your request will be deemed invalid and you will remain a Settlement Class Member and be bound by the Settlement, including all releases.

### 18. If I am a Settlement Class Member and don't opt-out, can I sue the Defendant for the same thing later?

No. You must opt-out of the Settlement to keep your right to sue Defendant or other released parties for any of the claims resolved by the Settlement.

## 19. What happens if I opt-out?

If you opt-out of the Settlement, you will not have any rights as a member of the Settlement Class. You will not receive a Cash Payment and/or Credit/Data Monitoring services as part of the Settlement. You will not be bound by the Settlement, releases, or by any further orders or judgments in this case. You will keep the right, if any, to sue on the claims alleged in the case at your own expense.

In addition, if you opt-out of the Settlement you cannot object to this Settlement because the Settlement no longer affects you. If you object to the Settlement <u>and</u> request to opt-out, your objection will be voided and you will be deemed to have opted-out.

# COMMENTING ON OR OBJECTING TO THE SETTLEMENT

## 20. How do I tell the Court I don't like the Settlement?

If you are a Settlement Class Member and you do not opt-out of the Settlement, you can object to the Settlement if you do not think it is fair, reasonable, or adequate. You can give reasons why you think the Court should not approve it. You can't ask the Court to change or order a different settlement; the Court can only approve or deny this Settlement. If the Court denies approval, no Settlement Class Member Benefits will be distributed and the lawsuit will continue. If that is what you want to happen, you must object.

You may object to any part of the proposed Settlement in writing. You may also appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney.

All notices of an intent to object to the Class Settlement Agreement must be written and should include all of the following:

a) the name of this Litigation (*J.W, v. LivaNova USA* Case No. 4:24-cv-2250);

b) your full name, current mailing address, telephone number and email address (if any);

c) the specific reasons for your objection or objections, accompanied by any legal support for the objection known to you or your counsel;

d) the number of times you have objected to a class action settlement within the 5 years preceding the date of your objection along with the caption of each case and a copy of any orders related to or ruling upon your prior objections that were issued by the trial and appellate courts in each listed case;

e) the identity of all counsel who represent you, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards;

f) the number of times your counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case;

g) Any and all agreements that relate to the objection or the process of objecting—whether written or oral—between you and your counsel and any other person or entity;

h) The identity of all counsel (if any) representing you who will appear at the Final Approval Hearing;

i) A list of everyone who will be called to testify at the Final Approval Hearing in support of your objection (if any);

j) a statement indicating whether you intend to personally appear at the Final Approval Hearing; and

k) Your original signature (an attorney's signature is not sufficient).

7

Completed objections must be submitted via postal mail to the Clerk of the Court and copies must be mailed to Class Counsel, Defense Counsel, and the Settlement Administrator postmarked no later than [**DATE**].

| Court | Class Counsel | Defense Counsel | Settlement Administrator |
|---|---|---|---|
| Clerk of the Court United States District Court for the Southern District of Texas 515 Rusk Street Houston, TX 77002 | Jeff Ostrow Kopelowitz Ostrow P.A. 1 West Las Olas Blvd., Ste. 500 Fort Lauderdale, FL 33301<br><br>Mariya Weekes Milberg Coleman Bryson Phillips & Grossman PLLC 201 S. Sevilla Avenue, Ste. 200 Coral Gables, FL 33134<br><br>Scott Cole Cole & Van Note, P.A. 555 12th Street, Ste. 2100 Oakland, CA 94607 | Neil Gilman Hunton Andrews Kurth LLP 200 Park Avenue New York, NY 10166 | *J.W. v. LivaNova USA* Settlement Administrator P.O. Box XXXX XXXXXX |

## 21. What's the difference between objecting and opting out?

Objecting is telling the Court that you don't like something about the Settlement. You can object to the Settlement only if you are a Settlement Class Member and do not opt-out of the Settlement. Opting-out of the Settlement is telling the Court that you don't want to be part of the Settlement. If you opt-out of the Settlement, you cannot object to it because it does not affect you.

# THE COURT'S FINAL APPROVAL HEARING

## 22. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing (at [Date and Time], at United States District Court for the Southern District of Texas, 515 Rusk Street, Houston, Texas 77002 before Judge Alfred H. Bennett. The hearing may be held virtually, and if it is, instructions on how to attend will be posted on the Settlement Website. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate, and Class Counsel's Application for Attorney's fees, Costs Service Awards. If there are objections, the Court will consider them. The Court may choose to hear from people who have asked to speak at the hearing. At or after the hearing, the Court will decide whether to approve the Settlement. There is no deadline by which the Court must make its decision.

The Court may reschedule the Final Approval Hearing or change any of the deadlines described in this Notice. The date of the Fairness Hearing may change without further notice to the Settlement Class Members. Be sure to check the website, www.[website].com for updates.

## 23. Do I have to come to the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish. If you send an objection, you do not have to come to the hearing to talk about it. As long as you mailed or filed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

## 24. May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you should include a statement in your written objection (*see* Question 20) that you intend to appear at the hearing. Be sure to include your name, address, and signature as well. It is the judge's discretion to let you speak at the Final Approval Hearing. You cannot speak at the hearing if you opt-out.

# IF I DO NOTHING

## 25. What happens if I do nothing at all?

If you are a Settlement Class Member and do nothing, you will not get a Cash Payment and/or Credit/Data Monitoring from this Settlement, and you will not be able to sue the Defendant or other released parties for the claims released by the Settlement Agreement.

# GETTING MORE INFORMATION

## 26. Are more details about the Settlement available?

This Notice summarizes the proposed Settlement—more details are in the Settlement Agreement and other case documents available at www.[website].com; by reviewing the case docket and filings online at www.txs.uscourts.gov; or by visiting the office of the Clerk of the Court for the United States District Court for the Southern District of Texas, 515 Rusk Street, Houston, TX 77002 between 8:00 a.m. and 4:45 p.m., Monday through Friday, excluding Court holidays.

## 27. How do I get more information?

Visit the website, www.[website].com, where you will find more information, including the Claim Form, a copy of the Settlement Agreement, and answers to questions about the Settlement and other information to help you determine whether you are eligible for a payment.

Contact the Settlement Administrator:

*J.W. v. LivaNova USA Settlement Administrator*
P.O. Box XXXX
City, ST XXXX-XXXX
1-XXX-XXX-XXXX

**PLEASE DO NOT CONTACT THE COURT, THE COURT CLERK'S OFFICE, OR DEFENDANT TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

# EXHIBIT 4
# (CLAIM FORM)

## CLAIM FORM

*J.W., a Minor, et al. v. LivaNova USA, Inc.*
**Case No. 4:24-CV-02250**
**United States District Court for the Southern District of Texas**

**The DEADLINE to submit or mail this Claim Form is: <mark>Month XX, 2025</mark>**

### GENERAL INSTRUCTIONS

If your Private Information was compromised or potentially compromised in the Data Security Incident experienced by LivaNova USA, Inc. on or around October 26, 2023, you are a "Settlement Class Member." If you received a Notice about this class action Settlement addressed to you, then the Settlement Administrator has already determined that you are a Settlement Class member.

As a Settlement Class member, you are eligible to Claim a Cash Payment of either (A) reimbursement of documented monetary losses (up to $5,000, subject to *pro rata* adjustment based on total Valid Claims) **or** (B) a Flat Cash Payment of approx. $100 (subject to *pro rata* adjustment based on total Valid Claims); **and** up to three years of Credit/Data Monitoring services.

### CLAIMANT INFORMATION

The Settlement Administrator will use this information for all communications regarding this Claim Form and the Settlement. If this information changes before the Settlement Class Member Benefits are issued, you must notify the Settlement Administrator.

First Name                                                M.I.    Last Name

Alternative Name(s)

Mailing Address, Line 1: Street Address/P.O. Box

Mailing Address, Line 2:

City:                                                     State:    Zip Code:

Telephone Number (Home)                    Telephone Number (Mobile)

Email Address (Required for Credit Monitoring Services)

Date of Birth (mm/dd/yyyy)            Class Member ID on front of mailed Class Notice (if known)

### BENEFIT SELECTION

You may select a Cash Payment of either (A) reimbursement of documented monetary losses (up to $5,000) **or** (B) a Flat Cash Payment of approx. $100) **and** up to three years of Credit/Data Monitoring services.  All Cash Payments are subject to pro rata adjustment based on total Valid Claim submission.

**Questions? Go to www.[website].com or call 1-XXX-XXX-XXXX.**

**1.  CASH PAYMENT:**  You may choose from one of the following Cash Payment Options:

**A.  Reimbursement of Documented Monetary Losses.** All members of the Settlement Class who provide valid **documentation** of monetary losses as set out below are eligible for reimbursement of such **documented** monetary losses that are fairly traceable to the Data Incident, not to exceed $5,000 per member of the Settlement Class.

☐   I would like to receive Reimbursement of Documented Monetary Losses, which I have described below:

| Cost Type (Fill all that apply) | Approximate Date of Loss | Amount of Loss |
|---|---|---|
| ○ Out-of-pocket expenses incurred as a result of the Data Incident, such as notary, fax, postage, copying, mileage and long-distance phone charges. | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) <br> ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) <br> ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐.☐☐ <br> $ ☐☐☐☐☐.☐☐ <br> $ ☐☐☐☐☐.☐☐ |
| **Examples of Supporting Third Party Documentation:** *Telephone bills and receipts for notary, fax, postage, and mileage reflecting out-of-pocket expenses. Please note that these examples of reimbursable documented out-of-pocket losses are not meant to be exhaustive, but exemplary. You may make claims for any documented out-of-pocket losses that you believe are reasonably related to the Data Incident or to mitigating the effects of the data security Incident.* | | |
| ○ Fees for credit reports, credit monitoring, or other identity theft insurance products purchased on or after the Data Incident through the date of claim submission. | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) <br> ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) <br> ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐.☐☐ <br> $ ☐☐☐☐☐.☐☐ <br> $ ☐☐☐☐☐.☐☐ |
| **Examples of Supporting Documentation:** *Receipts or account statements reflecting purchases made for Credit Monitoring or identity theft insurance services.* | | |
| ○ Compensation for proven monetary loss, professional fees including attorneys' fees, accountants' fees, and fees for credit repair services, fees associated with freezing or unfreezing credit with any credit reporting agency incurred as a result of the Data Incident. | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) <br> ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) <br> ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐.☐☐ <br> $ ☐☐☐☐.☐☐ <br> $ ☐☐☐☐.☐☐ |
| **Examples of Supporting Documentation:** *Invoices or statements reflecting payments made for professional fees/services.* | | |

**Questions? Go to www.[website].com or call 1-XXX-XXX-XXXX.**

| Cost Type<br>(Fill all that apply) | Approximate Date of Loss | Amount of Loss |
|---|---|---|
| ○ Other documented monetary losses. | ☐ ☐ / ☐ ☐ / ☐ ☐<br>(mm/dd/yy) | $ ☐ ☐ ☐ ☐ ☐ . ☐ ☐ |

**Examples of Supporting Documentation:** *Invoices or statements reflecting payments for other monetary losses fairly traceable to the Data Incident.*

NOTE: You must include documentation supporting your Claim for a documented loss Cash Payment. This can include receipts or other documentation not "self-prepared." "Self-prepared" documents such as handwritten receipts are, by themselves, **not** sufficient to receive reimbursement, but can be considered to add clarity to or support other submitted documentation.

**-OR –**

**B. Flat Cash Payment**: As an alternative to Option A above, you may elect to receive a Flat Cash Payment. If you wish to receive a Flat Cash Payment of approx. $100 (subject to *pro rata* increase or decrease), check the box below.

☐    I would like to receive a Flat Cash Payment.

**2. CREDIT/DATA MONITORING SERVICES**: If you wish to receive Credit/Data Monitoring Services, check the box below, provide your email address in the space provided above, sign, and return this Claim Form. Submitting this Claim Form will <u>not</u> automatically enroll you in Credit/Data Monitoring Services. To enroll, you must follow the instructions that will be sent to you using the email address you provided above after the settlement is approved and becomes Final (the "Effective Date").

☐    I would like to receive Credit/Data Monitoring Services. I have provided my email address above.

**PAYMENT:** If you use this Paper Claim Form, a check will be mailed to the address above. If you want to receive an electronic payment, please submit your Claim online.

All Cash Payments are subject to a pro rata increase or decrease depending upon the total value of all Valid Claims.

**SIGNATURE:** I swear and affirm that the foregoing is true and correct.

_____          _____
Signature                                                                              Date

**Questions? Go to www.[website].com or call 1-XXX-XXX-XXXX.**