## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| J.W., a Minor, by and through her guardian Angela Johnson, CRYSTAL SCHULTZ, MICHELE EUSEBE, JUSTIN MEDINA, ARTHUR PODROYKIN, and KATHERINE CHAUDHRY, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>LIVANOVA USA, INC.,<br><br>      Defendant. | CIVIL ACTION NO. 4:24-CV-02250 |

### PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, APPLICATION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS TO PLAINTIFFS AND MEMORANDUM IN SUPPORT

Pursuant to Fed. R. Civ. P. 23, Plaintiffs[1] respectfully submit this Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs, and Services Awards, supported by a Joint Declaration of Class Counsel ("Joint Decl."), attached as ***Exhibit B***, and a Declaration of the Settlement Administrator ("Admin. Decl."), attached as ***Exhibit C.***

## I.    INTRODUCTION

On December 6, 2024, this Court preliminarily approved the Settlement between Plaintiffs and Defendant LivaNova USA, Inc. resolving all disputes arising from the Data Security Incident. *See* ECF No. 31. The Agreement provides for substantial Settlement Class Member Benefits for approximately 129,000 individuals, including: (1) a non-reversionary, all cash $1,205,000.00 Settlement Fund, from which Settlement Class Members may elect to receive Cash Payments and

---

[1] All capitalized terms used herein shall have the same meanings as those defined in the Settlement Agreement, attached as ***Exhibit A***.

Credit/Data Monitoring; and (2) non-monetary relief consisting of comprehensive cybersecurity improvements. Agreement ¶ 62.

Plaintiffs and Class Counsel now move the Court for Final Approval and apply for an award of attorneys' fees and costs and Service Awards for the Class Representatives. The Settlement satisfies all Final Approval criteria. Currently, there are zero objections and zero Settlement Class members have opted-out. Admin. Decl. ¶¶ 14-15. This overwhelmingly positive response affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate. Class Counsel has fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions, and believe the Settlement fairly resolves their differences. The Court should grant Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees, Costs, and Service Awards.

## II.   INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 30) and its accompanying exhibits.

## III.   SUMMARY OF THE SETTLEMENT

Plaintiffs seek Final Approval for the Settlement Class defined as "All persons in the United States whose Private Information was potentially compromised as a result of the Data Security Incident." Agreement ¶ 62. Excluded from the Settlement Class are all persons who are governing board members of Defendant; governmental entities; the Court, Court's immediate family, and Court staff; and any individual who timely and validly opts-out of the Settlement. *Id*.

### A.   Settlement Consideration

The Settlement's non-reversionary all cash $1,205,000.00 Settlement Fund will be the total sum paid by Defendant to settle this Action and will be used to pay: (1) all Settlement Class

2

Member Benefits; (2) all Settlement Administration Costs; (3) any Service Awards to Class Representatives; and (4) any attorneys' fees and costs awarded to Class Counsel. Agreement ¶ 70.

### 1.    *Cash Payments*

*Cash Payment A – Documented Losses.* Settlement Class Members may elect a Cash Payment for up to $5,000.00 (subject to *pro rata* increase or decrease based upon total value of all Valid Claims) per Settlement Class Member. *Id*. ¶ 74. Settlement Class Members must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documented Data Security Incident related losses and submitting reasonable supporting documents. *Id.* Settlement Class Members will not be reimbursed for expenses reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of Defendant's notification letter or otherwise. *Id.* If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if the Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure, the Claim will be rejected, and the Settlement Class Member's Claim will be treated as if he or she elected Cash Payment B. *Id.*

*Cash Payment B – Flat Cash Payment.* As an alternative to Cash Payment A, a Settlement Class Member may elect to receive Cash Payment B, a flat cash payment estimated to be $100.00 (subject to *pro rata* increase or decrease based upon total Valid Claims). *Id.*

### 2.    *Credit/Data Monitoring*

In addition to a Cash Payment, Settlement Class Members may elect up to three years of Credit/Data Monitoring with one credit bureau, valued at $90.00 per year. *Id.*

### 4.    *Business Practice Changes*

Defendant has provided Plaintiffs with assurances that it has undertaken or will undertake

reasonable steps to further secure its systems and environments such that the improvements made or which will be made will protect Settlement Class members' information from future unauthorized disclosure. *Id.* ¶ 76.

### 5.    *Releases*

The Releasing Parties will release the Released Parties for claims relating to the Data Security Incident. *Id.* ¶ 113.  Regardless of whether they submit a Valid Claim, Settlement Class Members who do not opt-out of the Settlement will release all claims, whether known or unknown. *Id.* ¶¶ 113-117. The Releases are narrowly tailored to the claims in the Action. Joint Decl. ¶ 13.

### 6.    *Funds Remaining After Distribution*

The Settlement is designed to exhaust the Settlement Fund. *Id.* ¶ 112. However, if funds remain from uncashed checks 20 days following the 180-day check negotiation period, a subsequent payment will be evenly made to all Settlement Class Members with approved Claims for Cash Payments who cashed or deposited the initial payment, provided the average check amount is at least $3.00. Distribution of the remaining amounts in the Settlement Fund shall continue up to a maximum of $500 for any Settlement Class Member until the average check or digital payment is less than $3.00, whereupon all remaining funds shall be distributed *cy pres* to a Court approved recipient. *Id*. Plaintiffs recommend the Texas Bar Foundation (https://txbf.org/).

## IV.    NOTICE PROGRAM, CLAIMS, OPT-OUTS, AND OBJECTIONS

### A.    Notice Program Satisfies Rule 23 and Due Process

The Settlement Administrator implemented the Notice Program.  *See generally* Admin. Decl.; Joint Decl. ¶ 26. Postcard Notices were sent to all Settlement Class members for whom a physical address was known by the Defendant; and Email Notices were sent for those whose physical addresses were not known, but an email address was available. *Id*. Those Settlement Class

members whose emails bounced-back or were otherwise undeliverable received a Postcard Notice. *Id*. A Long Form Notice with greater detail is also available on the Settlement Website or by mail upon request by a Settlement Class member. Admin. Decl. ¶ 9.Postcard Notices returned as undeliverable were re-mailed to any new address available through USPS information or to better addresses that were found using a third-party address lookup service. *Id.* ¶ 6. As of February 18, 2025, individual notice efforts have reached approximately 74.77% of the Settlement Class members. *Id.* ¶ 16. Further, to ensure the best notice practicable, Notice by digital publication was accomplished to capture the awareness of any Settlement Class members who may not have received an Email Notice or Postcard Notice. *Id*. ¶ 10.

The Postcard Notice and Email Notice clearly and concisely summarized the Settlement and the Settlement Class members' legal rights, and directed them to the Settlement Website for additional information, including the Long Form Notice and Settlement Agreement and how to submit a Claim. *Id*. Ex. 1-2. The publication notice also provided this information. *Id*., Ex. 4.

The Settlement Administrator established a dedicated Settlement Website for Settlement Class Members to obtain detailed information about the Action, review important documents and relevant dates and provides contact information for the Settlement Administrator. *Id.* ¶ 11. As of February 17, 2025, there have been 30,186 visits to the Settlement Website. *Id*. The Settlement Administrator also established a toll-free telephone line for the Settlement Class to call with Settlement-related inquiries and answer frequently asked questions of individuals in the Settlement Class who call with or otherwise communicate such inquiries. *Id.* ¶ 12. As of February 17, 2025, there have been 635 calls to the toll-free line for a total of 2,333 minutes. *Id*.

The Notice Program provided was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present

5

their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). The Notice conveyed the required information to the Settlement Class, allowing reasonable time for those interested in making an appearance to do so. "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *O'Donnell v. Harris Cnty., Texas*, No. CV H-16-1414, 2019 WL 4224040, at *26 (S.D. Tex. Sept. 5, 2019). Instead, a settlement notice need only satisfy the broad reasonableness standards imposed by due process. *Id*. Here, the Notice adequately informed Settlement Class Members of the nature of the Action, the Settlement Class definition, the claims at issue, the Settlement Class member' rights to object or opt-out, and/or enter an appearance through an attorney, and the binding effect of Final Approval and class judgment. *See* Admin. Decl., Ex. 1-3, 5. The Notice utilized clear and concise language that is easy to understand. Moreover, the Settlement Administrator—with the assistance of the Parties—took all necessary measures to ensure Notice reached as many of the Settlement Class Members as possible. Direct notice reached 74.44% of the Settlement Class. *Id.* ¶ 16. Such notice complies with the program approved by this Court in its Preliminary Approval Order, meets due process considerations, and weighs in favor of Final Approval. *Id.* ¶ 17.

### B.    Claims, Opt-Outs, and Objections

The Claim submission process was structured to give all Settlement Class members adequate time to review the Settlement terms, submit their Claims, and decide whether to opt-out of or object to the Settlement. Joint Decl. ¶ 27. The opt-out and objection deadline is March 5, 2025. Agreement ¶¶ 47-48. As of February 17, 2025, the Settlement Administrator has received 1,663 Claim Forms, zero opt-out requests and zero objections. Admin. Decl. ¶¶ 13=15. Claim Forms are still subject to final audits, including a full assessment of each Claim's validity and a review for duplicate submissions. *Id.* Class Counsel will update the Court with the final results of

the Notice Program at the Final Approval Hearing, including responding to an objection, if one is filed.

## V.      SETTLEMENT CLASS CERTIFICATION

The Court granted Preliminary Approval on December 6, 2024. ECF No. 30-31. In the Court's Preliminary Approval Order, the Court, for settlement purposes only, preliminarily certified the Action as a class action for the Settlement Class, finding prerequisites of numerosity, commonality, typicality, adequacy, predominance, and superiority were satisfied pursuant to Fed. R. Civ. P. 23(a) and (b)(3), and that the Settlement Class should be certified pursuant to Fed. R. Civ. P. 23(b)(2). The Court appointed Plaintiffs as Class Representatives pursuant to Fed. R. Civ. P. 23(e)(2)(A), and Jeff Ostrow of Kopelowitz Ostrow P.A., Mariya Weekes of Milberg Coleman Bryson Phillips Grossman PLLC, and Scott E. Cole of Cole & Van Note as Class Counsel. The Court also appointed Verita Global as the Settlement Administrator and approved the Notices and Claim Form. Because nothing has changed regarding class certification, the Court should finally certify the Settlement Class. For efficiency, Plaintiffs incorporate by reference their Settlement Class certification arguments from the Motion for Preliminary Approval. ECF No. 30 at 9-13.

## VI.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE.

### A.      Legal Standard for Final Approval

The final approval standard for a proposed class action settlement under Fed. R. Civ. P. 23(e)(2) is whether it is "fair, reasonable and adequate." Common-law criteria preceded the Rule 23(e)(2) factors. *In Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983), the Fifth Circuit laid out six fairness, reasonableness, and adequacy factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the

plaintiffs' success on the merits; (5) the range of possible recovery and (6) the opinions of the class

counsel, class representatives and absent class members. *Union Asset Mgmt. Holding A.G. v. Dell,*

*Inc.,* 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed*, 703 F.2d at 172).

The Rule 23(e)(2) factors are whether:

(A) the class representative and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

"Because the Rule 23 and case-law factors overlap, courts in this circuit often combine

them in analyzing class settlements." *O'Donnell*, 2019 WL 4224040, at *8; *Hays v. Eaton Grp.*

*Attorneys*, LLC, No. 17-88JWD-RLB, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019); *Al's Pals*

*Pet Care v. Woodforest Nat'l Bank*, NA, No. H-17-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan.

30, 2019). *See also* Fed. R. Civ. P. 23(e)(2), Committee Notes to 2018 amendments ("The goal of

this amendment is not to displace any [circuit case-law] factor, but rather to focus the court and

the lawyers on the core concerns of procedure and substance that should guide the decision whether

to approve the proposal."). "When considering [Rule 23(e)(2)] factors, the court should keep in

mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express,*

*Inc.*, No. 301CV1754L, 2003 WL 22976611, at *4 (N.D. Tex. Dec. 11, 2003).

Indeed, because "compromise is the essence of a settlement," "the settlement need not

accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am.*

*Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978); *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir.

1977). Accordingly, "absent fraud, collusion, or the like, [courts] should be hesitant to substitute

[their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649. "Nothing has occurred that would alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate." *Spegele v. USAA Life Ins. Co.*, No. 5:17-CV-967-OLG, 2021 WL 4935978, at *3 (W.D. Tex. Aug. 26, 2021). Here, the Settlement Class's response (only zero opt-outs and zero objections) emphasizes the Settlement is fair, reasonable and adequate. Thus, Final Approval should be granted.

> **B.    Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class.**

As with Rule 23(a) adequacy of representation requirement, plaintiffs must establish that: (1) the there is no antagonism or conflict of interest between the class representatives and other members of the class; and (2) counsel and the class representatives are competent, willing, and able to protect the interests of absent class members. *Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Here, the Settlement Class members are all potentially affected by the same Data Security Incident as the Class Representatives, and thus they have common interests with the Settlement Class. Joint Decl. ¶ 34.  Moreover, the Class Representatives have ably represented the Settlement Class, maintaining contact with Class Counsel, reviewing and approving pleadings, assisting in the Action's investigation, remaining available for consultation throughout mediation, reviewing the Settlement documents, and answering Class Counsel's questions. *Id.* ¶ 33.

Class Counsel have also vigorously pursued the Settlement Class' interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. *Id.* ¶ 40.  To do so, they leaned on their extensive experience in data breach litigation, their detailed investigation of this particular matter, and informal discovery exchanged during the course of their negotiations. *Id.* As such, Fed. R. Civ. P. 23(e)(2)(A) supports Final Approval.

**C.    The Settlement Results From Arms-Length Negotiations and Without Fraud or Collusion.**

"The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *O'Donnell*, 2019 WL 427331 at *10 (quoting *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018)). "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011). Here, there is no evidence of fraud or collusion. After a full exchange of information related to liability and damages, the Parties participated in an in-person mediation with the assistance of respected mediator, the Honorable Diane Welsh (Ret.). Joint Decl. ¶ 10. Thereafter, the Parties spent weeks negotiating, drafting, and finalizing the finer points of the Settlement in the Agreement. *Id.* ¶ 11. Moreover, the proposed Settlement does not favor any Settlement Class member over any other, favoring approval. *See Vaughn v. Am., Honda Motor Co.*, 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007). Accordingly, the presumption of reasonableness should apply here, and both Fed. R. Civ. P. 23(e)(2)(B) and the first *Reed* factor are satisfied.

**D.    The Settlement provides substantial relief to the Settlement Class, in light of the uncertainty of prevailing on the merits, the effectiveness of the proposed distribution of relief, and the attorneys' fees sought. (Fed. R. Civ. P. 23(e)(2)(C)).**

The third and most important Rule 23(e)(2)(c) factor weighs heavily in favor of granting Preliminary Approval and overlaps with the second, fourth, and fifth *Reed* factors (complexity, length, and expense of litigating; probability of prevailing on the merits; and range of possible recovery and certainty of damages). The Settlement guarantees Settlement Class Members real relief for harms and protections from potential future fall-out from the Data Security Incident. Joint Decl. ¶ 23. First, all Settlement Class Members may select three years of Credit/Data Monitoring

valued at $90.00 per person, per year to protect assets and providing identity protection. Agreement ¶ V(c); Joint Decl. ¶ 20. Second, they may Claim Cash Payment A (up to $5,000.00 for documented losses, subject to *pro rata* adjustment) or Cash Payment B ($100.00 estimated flat cash payment, subject to *pro rata* adjustment). Agreement ¶ V(a)(b). These benefits are consistent with, and in fact exceed, other approved settlements. Joint Decl. ¶ 21.

Although Plaintiffs are confident in the merits of their claims, the litigation risks cannot be disregarded. *Id.* ¶ 17. Besides the risk of losing at trial, Plaintiffs anticipate substantial additional costs if litigation continues, including experts. *Id.* Plaintiffs would need to defeat a motion to dismiss, counter a later motion for summary judgement, and both gain and maintain certification of the Settlement Class, with a near inevitable interlocutory appeal attempt. *Id.* Because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases generally face substantial hurdles—even just to make it past the pleading stage. *See, e.g., Logan v. Marker Group, Inc.*, 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) (dismissing all but one claim). Class certification is another hurdle. *See, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying class certification in a data breach case).

Through the Settlement, Plaintiffs and Settlement Class members gain significant benefits without risking not receiving any relief at all if the case continues. The Settlement provides immediate and substantial benefits to over 129,000 Settlement Class members—similar to the relief and benefits obtained in other data breach class actions—and on a much quicker timeline.

Relevant to the results obtained is the relief afforded in similar data breach class actions. A few recent examples of approved data breach settlements from around the country, which demonstrate how the instant Settlement compares very favorably, and exceeds many similar common fund data breach settlements, include: *See, e.g., Kondo v. Creative Serv.*, No. 1:22-cv-10438-DJC, ECF No. 34, 39 (D. Mass. Sept. 7, 2023) ($1,200,000 for approx. 165,000 members); *Julien v. Cash Express, LLC*, No. 2022-CV-221 (Putnam Cty., Tenn.) ($850,000 common fund for 106,000 class members); *Tucker v. Marietta Area Health Care*, No. 2:22-CV-00184, ECF No. 35, 38 (S.D. Ohio Dec. 8, 2023) ($1,750,000 for approx. 214,000 members); *Mendoza, et al. v. Crystal Bay Casino LLC*, No. 3:23-cv-00092-MMD-CLB, ECF No. 39, 46 (D. Nev. Aug. 5, 2024) ($675,000 for approx. 94,000 members); *Reynolds v. Marymount Manhattan College*, No. 1:22-cv-06846, ECF No. 58, 73 (S.D.N.Y.) ($1,300,000 common fund for approx. 191,000 class members).

As this Motion details below, the 33.33% of the common Settlement Fund for attorneys' fees is regularly granted in the Fifth Circuit. *See, e.g., Miller v. Global Geophysical Servs., Inc.*, No. 14-cv-0708, 2016 WL 11645372, at *1 (S.D. Tex. Jan. 14, 2016); *Frost v. Oil States Energy Servs., LLC*, No. 4:15–cv–1100, 2015 WL 12780763, *2 (S.D. Tex. Nov. 19, 2015).

**E.    The Settlement treats Settlement Class Members equitably. (Fed. R. Civ. P. 23(e)(2)(D)).**

Here, the Settlement does not improperly discriminate between any segments of the Settlement Class. Joint Decl. ¶ 24. All Settlement Class members are eligible to make a Claim for a Cash Payment and Credit/Data Monitoring, subject to proper claim completion and validation by the Settlement Administrator. Accordingly, this factor also weighs in favor of Final Approval.

**F.    The remaining *Reed* factors also weigh in favor of Final Approval.**

The remaining *Reed* factors also support Final Approval. As to the third factor (stage of the

litigation and available discovery), the Settlement was reached only after extensive investigation by the Parties and an informal exchange of information such that Class Counsel could fully understand the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses. Where Parties possess ample information with which to evaluate the merits of competing positions, a lack of formal discovery will not prevent settlement approval. *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *Cotton,* 559 F.2d at 1331.

As to the sixth factor (opinions of class counsel, class representatives, and absent class members), there is no antagonism to the Settlement. Admin. Decl. ¶¶ 14-15.  Plaintiffs approve of its terms, as do proposed Class Counsel, based on their deep experience litigating data breach and other class actions. Joint Decl. ¶¶ 30-31. Following Notice, there are zero objections to the Settlement and only zero opt-outs. If any objections subsequent are filed, Class Counsel will respond to them.

With each Rule 23(e)(2) and the *Reed* factors favoring Final Approval, the Settlement should be approved as fair, reasonable, and adequate.

## VIII.   APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

Pursuant to the Settlement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees of $401,666.67 which is equal to 33.33% of the $1,205,000.00 Settlement Fund, and $21,229.91 for reasonable litigation costs. Joint Decl. ¶¶ 34, 47-48. Fifth Circuit precedent governing common fund settlements confirms this Court has discretion to use either the percentage of the fund or lodestar method to determine whether the requested fee award is appropriate. Class Counsel seek an award under the percentage method, the favored method in the Fifth Circuit. The award requested is reasonable and well within the range of fee awards in this Circuit. Also, the requested

litigation costs sought and Service Awards for the Class Representatives are reasonable.

**A.    The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.**

Fed. R. Civ. P. 23(h) authorizes awards in class action settlements for "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Under the well-settled "common fund" doctrine, attorneys who achieve a recovery for a class via a common fund are entitled to an award of attorneys' fees and costs from that fund as compensation for their work. *See*, *e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970). In class action settlements, courts retain an "independent duty" to "ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel." *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008).

To calculate attorneys' fees in common fund cases, courts in the Fifth Circuit can apply: (1) the percentage of the fund method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier. *Union Asset*, 669 F.3d at 644. The percentage method, blended with application of the Fifth Circuit's "*Johnson* factors" (defined *infra*) is the preferred one for common fund class actions to assess the reasonableness of the attorneys' fees sought and should be applied in this Action. *Union Asset*, 669 F.3d at 643.

**B.    Application of the Johnson Factors**

In applying the percentage of the fund method, this Court is to apply the 12 factors from *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974) ("*Johnson* factors"):

(1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee

14

[for similar work in the community]; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; and (12) Awards in similar cases.

*Johnson*, 488 F.2d at 717-19. The Court need not consider each factor in making its determination. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331 (5th Cir. 1995). Each of the *Johnson* factors will vary, depending on the case, and rather than imposing a rigid application, the Fifth Circuit entrusts lower courts to apply those factors in view of the case's particular circumstances. *Brantley v. Surles*, 804 F.2d 321, 325-26 (5th Cir. 1986).[2]

**1.    *The Claims Against Defendant Required Substantial Time and Labor.***

Class Counsel's coordinated work paid dividends for the Settlement Class. Joint Decl. ¶ 47. Class Counsel's time and resources devoted to prosecuting and settling this Action justify the requested fee. *Id.* Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. *Id.* ¶ 46. The organization of Class Counsel ensured that work was coordinated to maximize efficiency and minimize duplication of effort. *Id.* As this Court recently observed in *Burnett v. CallCore Media, Inc.*, No. 4:21-cv-03176, 2024 WL 3166453, at *6 (S.D. Tex. June 25, 2024), this time and labor factor turns on more than the number of hours worked because an early settlement can signal counsel's efficiency and effectiveness in avoiding lengthy litigation. It is more important to emphasize the value of the hours worked.

To date, Class Counsel have spent 362.2 hours prosecuting this Action against Defendant and estimate spending at least 50 additional hours. Joint Decl. ¶ 48.[3] Class Counsel devoted substantial time investigating the claims; researching and developing the legal claims at issue;

---

[2] *Johnson* factors (7) and (11) are not applicable in this case.
[3] Should the Court seek more information regarding Class Counsel's lodestar, such information will be provided to the Court for *in camera* consideration.

working with experts, exchanging informal discovery, consolidating and organizing the related actions, and preparing for and attending a successful mediation; negotiating and drafting that Agreement; seeking Preliminary Approval; complying with the Preliminary Approval Order to ensure the Notice Program and Claim process were implemented; and preparing this Motion. *Id*. ¶ 46. Time will also be spent preparing for and attending the Final Approval Hearing, followed by substantial time working with the Settlement administration should Final Approval be granted to ensure Valid Claims are paid and the Settlement implemented. *Id.* Each of those efforts was essential to achieving the Settlement. *Id.* ¶ 47.

### 2. The Novelty and Difficulty of the Relevant Questions Required Skilled and Experienced Counsel.

Class Counsel's legal work has conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles. This factor weighs heavily in support of the requested attorneys' fee award. Courts routinely recognize the novelty and difficulty of the questions present in a case as a significant factor to be considered in making a fee award. Data breach class actions are notoriously risky and complex cases that present novel issues of law and fact as data security continues to develop and evolve. *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex."); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. l:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) (recognizing that "[data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are not always predictable."). *See also, e.g., Logan,* 2024 WL 3489208 at *13 (dismissing all but one claim); *In re Blackbaud*, 2024 WL 2155221, at *28 (denying class certification in a data breach case).

In evaluating the quality of representation by Class Counsel, the Court should also consider

opposing counsel. Defendant is represented by extremely capable counsel who are worthy, highly competent adversaries. Joint Decl. ¶ 38.

### 3. Class Counsel Achieved a Successful Result in the Face of Risks and Undesirable Challenges.

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result, with $1,205,000.00 in cash recovered for the Settlement Class, affording them meaningful Settlement benefits designed to meet the typical repercussions faced by consumers following a data breach. The risk involved is emphasized by the fact that, historically, data breach class actions face substantial hurdles in surviving the class certification stage. *See, e.g.*, *In re Blackbaud,* 2024 WL 2155221 at *1 (denying motion for class certification); *Fulton-Green v. Accolade,* No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare"); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Further, maintaining class certification through trial is another overarching risk. Joint Decl. ¶ 17. Considering Defendant has compelling defenses, continuing to pursue this case posed a significant risk for Plaintiffs and the Settlement Class, and makes litigating data breach cases less desirable. *Id.* Therefore, Class Counsel's risks weigh in favor of Class Counsel's requested fee.

### 4. Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis and Lost Opportunity for Other Employment.

In undertaking to prosecute this case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment, while foregoing the opportunity to work on other cases. *Id.* ¶ 43. That risk warrants an appropriate fee. *Burnett*, 2024 WL 3166453 at *7 ("The risk of 'receiving little to no recovery is a major factor in considering an award of attorneys' fees.'" (citation omitted)). Class Counsel remains completely uncompensated for the time invested in the Action, in addition to the substantial costs they have advanced. Joint Decl. ¶

17

44. Public policy concerns—ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—also support the requested fee. *Id.*

### 5.    *The Requested Fee Comports with the Market for Fee Awards in Contingent Fee Cases and Fee Awards in Similar Class Actions.*

The attorneys' fee award sought here is within the range of fees typically awarded in similar cases in the Fifth Circuit and in this District. Courts in the Fifth Circuit as a rule award fees in the 30% to 36% range. *See, e.g.*, *Welsh v. Navy Fed. Credit Union*, No. 5:16–CV–1062–DAE, 2018 WL 7283639, at *16 (W.D. Tex. Aug. 20, 2018) ("When the percentage method is used, fee awards commonly fall between 20% at the low end and 50% at the upper end[.]"); *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-M, 2018 WL 1942227, at *12 (N.D. Tex. Apr. 25, 2018) (awarding one-third of the Settlement Fund); *Miller*, 2016 WL 11645372 at *1 (same); *Frost*, 2015 WL 12780763 at *2 (same). Class Counsel's fee request is also reasonable considering the market rate in the private marketplace where a typical contingent fee for a non-class case is 33.33%. *See, e.g.*, *Buetten v. Harless*, No. 3:09-cv-00791-K, 2013 WL 12303143, at *11 (N.D. Tex. Nov. 13, 2013) ("The percentage method is also consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements.").

Examples of attorneys' fee awards of 33.33% or higher in data breach cases include: *Garza v. HealthAlliance, Inc.*, No. 72450/2023 (NY Sup. Ct., Westchester Cty.) (approving 35% of the settlement fund); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-MD-03090, 2025 WL 457896, at *11-12 (S.D. Fla. Feb. 11, 2025) (approving 33.33% of the settlement fund); *In re Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (KAD) (D. Conn.), ECF No. 48 (same); *In re CorrectCare Data Breach Litig.*, No. 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 14, 2024) (same); *Kondo, et al. v. Creative Services, Inc.*, No. 1:22-cv-10438-DJC, ECF

No. 39 (D. Mass. Sept. 7, 2023) (same); *In re Sovos Compliance Data Security Incident Litigation*, No. 1:23-cv-12100 (D. Mass.), ECF No. 12 (same); *Alliance Ophthalmology, PLLC v. ECL Group, LLC*, Nos. 1:22-CV-296, 1:22-CV-468, 2024 WL 3203226, at *14-16 (M.D.N.C. June 27, 2024); *Abrams, et al. v. The Savannah College of Art and Design Inc.*, No. 1:22-cv-04297-LMM, ECF No. 29 (N.D. Ga. Sept. 23, 2023) (same); *Phelps, et al. v. Toyotetsu North America*, No. 6:22-cv-00106-CHB-HA, ECF No. 47 (E.D. Ky. Oct. 25, 2023) (same); *In re: Forefront Data Breach Litigation*, No. 1:21-cv-000887-LA, 2023 WL 6215366, at *9 (E.D. Wis. Mar. 22, 2023) (same); and *Davidson v. Healthgrades Operating Company, Inc.*, No. 1:21-cv-01250-RBJ, ECF No. 50 (D. Colo. Aug. 22, 2022) (same).

### B.    Class Counsel's Cost Reimbursement Request Is Reasonable

District courts allow reasonable litigation costs to be paid from the common fund. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012); Fed. R. Civ. P. 23(h) (authorizing recovery of "nontaxable costs"); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 334 (W.D. Tex. 2007). The costs sought to be reimbursed were all advanced by Class Counsel and were necessarily and reasonably incurred in the prosecution of this case, including court fees, mediation fees, research, and other services. *Id.* Therefore, the requested $21,229.91 litigation costs should be awarded to Plaintiffs' counsel.

### C.    The Requested Service Awards Are Reasonable

Class Counsel move this Court to approve a $2,500.00 Service Award to each Plaintiff for their service as a Class Representative. Courts approve reasonable service awards to compensate the named plaintiffs for their services provided and risks taken. *See, e.g., Armstrong v. Kimberly-Clark Corp.*, No. 3:20-CV-3150-M, 2024 WL 1123034, at *7 (N.D. Tex. Mar. 14, 2024) (awarding $2,500 service awards); *Diaz v. World Acceptance Corp.*, No. 1:19-CV-957-RP, 2021 WL

2709677, at *2 (W.D. Tex. Jan. 7, 2021) (same).

Likewise, the Plaintiffs here have been instrumental in assisting Class Counsel throughout this proceeding. Joint Decl. ¶ 54. Plaintiffs initiated and remained in contact with Class Counsel; considered and reviewed the pleadings in this case and the Agreement; supervised, monitored, and periodically visited with Class Counsel; provided background documents and followed the progress of this litigation to ensure that Settlement Class received the best recovery possible given the particular circumstances and risks of the Action. *Id.* Balancing the services Plaintiffs rendered against the modest amount of the $2,500.00 each requested, for a total of $15,000.00, the Court should find such amount is reasonable.

## V.    CONCLUSION

Plaintiffs and Class Counsel respectfully request this Court enter an Order: (1) granting Final Approval to the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) confirming the appointment of Plaintiffs Crystal Schultz, Michele Eusebe, Justin Medina, Arthur Podroykin, and Katherine Chaudhry as Class Representatives; (4) confirming the appointments of Jeff Ostrow, Mariya Weekes, and Scott Cole as Class Counsel; (5) confirming the appointment of Verita as Settlement Administrator; (6) awarding Class Counsel $401,666.67 for attorneys' fees and $21,229.91 for costs; (7) approving payment of the Settlement Administration Costs; (8) overruling timely objections, if any; and (9) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation. Plaintiffs attach a proposed Final Approval Order as ***Exhibit D***.

Dated: February 18, 2025                 Respectfully submitted,

                                         /s/ Jeff Ostrow
                                         Jeff Ostrow, Esq.*
                                         **KOPELOWITZ OSTROW P.A.**
                                         1 West Las Olas Blvd., Ste. 500
                                         Fort Lauderdale, FL 33301
                                         954-332-4200
                                         ostrow@kolawyers.com

                                         Mariya Weekes, Esq.*
                                         **MILBERG COLEMAN BRYSON
                                         GROSSMAN PHILLIPS PLLC**
                                         201 Sevilla Avenue, 2nd Floor
                                         Coral Gables, FL 33134
                                         786-879-8200
                                         mweekes@milberg.com

                                         Scott E. Cole, Esq.*
                                         **COLE & VAN NOTE**
                                         555 12th Street, Ste. 2100
                                         Oakland, CA 94607
                                         510-891-9800
                                         sec@colevannote.com

                                         *Class Counsel*

                                         Joe Kendall, Texas Bar No. 11260700
                                         **KENDALL LAW GROUP, PLLC**
                                         3811 Turtle Creek Blvd., Ste. 1450
                                         Dallas, TX 75219
                                         214-744-3000
                                         jkendall@kendalllawgroup.com

                                         *Texas Local Counsel*

                                         *Admitted Pro Hac Vice*

## **CERTIFICATE OF CONFERRAL**

I hereby certify Plaintiffs and Defendant conferred regarding the relief requested, and this motion is unopposed.

                                         /s/ Jeff Ostrow
                                         Jeff Ostrow

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Motion was served on all counsel of record on

February 18, 2025 via CM/ECF, in accordance with LR5.3 and Fed. R. Civ. P. 5(b).

*/s/ Jeff Ostrow*
Jeff Ostrow